## Kentland Coal & Coke Company v. Elswick, et al.

(Decided January 6, 1916.)

### Appeal from Pike Circuit Court.

1. Patents—When Junior Patent Void.—Where a junior patent laps over on to a senior patent, the former, as to the extent of the lap, is void.

2 Vendor and Purchaser—Relief Against One to Whom Vendor Conveyed.—A vendor may procure relief against fraud and misrepresentations as against a third party to whom his vendee has conveyed when the third party has notice of the facts surrounding the conveyance by the vendor, although there is nothing in his deed to indicate any fraud or misrepresentation.

3. Fraud—When Equity Will Not Relieve.—The rule is that where one can read and write, and is capable of reading and understanding an instrument which he executed, is bound thereby and may not obtain relief in equity against the instrument, but this rule is qualified by the further one to the effect that if the one procuring the instrument has practiced fraud upon the other by misrepresentations as to its contents or otherwise, thereby lulling the other party into repose, may not invoke or have the benefit of the first rule above mentioned.

4. Adverse Possession—When Possession Presumed Amicable.—Generally speaking, the possession of the vendor of the land conveyed, after the execution of the deed when the same was with consideration and fairly obtained, will be presumed to be amicable

to the title conveyed to his vendee, but the rule does not prevail
where the deed was obtained without consideration and by mis-
representations and fraud.

AUXIER, HARMAN & FRANCIS and HAGER & STEWART for
appellant.

STRATTON & STEPHENSON for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, Kentland Coal & Coke Company, as
plaintiff below, brought this suit against appellee, K.
B. Elswick and M. C. Justice, seeking to recover from the
defendants a tract of land in Pike county consisting of
about eighteen acres

The answer of defendants denies the title of the
plaintiff, and the plea of champerty was relied upon. In
another paragraph of the answer it was made a counter-
claim, wherein it is charged that the immediate vendor
of the plaintiff, the Mason Coal & Coke Company, fraud-
ulently and by deceit and without consideration, obtained
a deed from defendant Elswick and wife to the land in
controversy, which deed is dated June 1, 1910, and being
the title upon which the plaintiff relies to establish his
right to recover. The defendant not only claimed title
to the land in direct succession from a patent by the
Commonwealth, but he also claimed title by adverse pos-
session by himself and his vendors, which possession was
such as the law demands in such cases, and that he, there-
fore, was himself the owner and entitled to the possession
of the land in controversy; and that he, after executing
the deed to the Mason Coal & Coke Company, the plain-
tiff's immediate vendor, remained in possession of same,
claiming it as his own, and that he was in such adverse
possession at the time the plaintiff received its deed on
June 29, 1910, and it was, therefore, charged that the
deed under which plaintiff claims title was and is
champertous and void.

It was furthermore claimed by the defendant that
plaintiff not only had actual notice of the want of con-
sideration for the deed executed by him to the Mason
Coal & Coke Company on June 1, 1910, and the fraudu-
lent means by which it was procured, but he also claimed
that his continued possession, up to and including the
date of plaintiff's deed, was sufficient to and did put
plaintiff upon inquiry as to the character of his posses-

sion, and that it, therefore, had constructive notice of the fraud and deceit practiced upon him by the Mason Coal & Coke Company.

These contentions were properly denied, and upon motion the case was transferred to the equity docket, and after hearing the proof, and the cause being submitted, the chancellor rendered judgment dismissing the petition, and in doing so, determined that the possession of the defendant was sufficient to require the plaintiff to take notice of the character of defendant's claim, and to charge it with constructive knowledge of the fraud and deceit which defendant claims had been practiced upon him, as well as the fact that the deed was without consideration.

It might be here stated that the defendant, Justice, was upon a portion of the land in controversy as a tenant of the defendant, Elswick, and was engaged in operating a saw mill thereon, and for this reason alone was made a defendant.

The deed to plaintiff of June 29, 1910, from the Mason Coal & Coke Company, conveyed 3,703.72 acres, and included in this number of acres was a tract of 1,252 acres, which latter tract is known in this record as the "Polley" tract, it having been conveyed to plaintiff's vendor by a man by the name of Polley and his wife. The patent under which the Polley tract was claimed includes the land in controversy, but it was obtained long subsequent to a prior patent under which the defendant claims the land; and under the numerous decisions from this court, the Polley patent, as it lapped over and included the lands covered by the patent under which defendant claims, to the extent of the lap, is void. So that no title could have been conveyed by the Mason Coal & Coke Company to the land in controversy (covered by the lap of the Polley patent) without some kind of a conveyance from defendant Elswick and wife.

Previous to June 1, 1910, negotiations had been entered into between the two coal companies for the sale of the entire 3,703.72 acre tract, and the attorneys and officials of the appellant in investigating the abstract to this large body of land discovered the claim of the defendant Elswick. There were a considerable number of other defective titles, and it appears that the Mason Coal & Coke Company, under the solicitation and advice of the appellant, undertook to correct these errors and to per-

fect the title. In obedience to this understanding, one
Hatcher approached the defendant, Elswick, and stated
to him, according to the testimony of the defendant, as
follows: "He said he wanted me to sign a quit-claim
deed to the Polley tract and the Polleys would have to
sign a quit-claim deed to the tract I owned. * * * He
said he would not interfere with my tract, and it was just
merely a quit-claim and I would have to sign it as it
was all in one survey. He said I would have to sign a
quit-claim deed to the Polley farm and that they would
have to sign one to my tract." He further testified that
he relied upon the statements of the man Hatcher and
signed the deed. It is shown that the defendant can read
and write and it is insisted that it was his duty to have
read the deed, and if he failed to do so, equity will not
relieve him as against a third party, under the maxim
that "equity aids only the vigilant." We fully recognize
this principle as being sound and just, but it must be
remembered that it is qualified by another principle of
equity, to the effect that the party seeking to take ad-
vantage of the maxim must be free from fault, and he
must have done nothing to lull his adversary into repose,
thereby obstructing and preventing vigilance on the part
of the latter. These principles are so fundamental that
we deem references to authorities unnecessary. The man
Hatcher was not produced as a witness in this case, nor
is there anything to explain why he failed to testify. We
have nothing within the record, then, except the state-
ments which we have taken from the testimony of the
defendant, and which, under the circumstances, we are
bound to believe.

Applying the doctrine referred to above, we are
forced to the conclusion that the rights of the defendants
are not impaired by his failure to read, or to fully ap-
prise himself of the contents of the deed which he exe-
cuted to the Mason Coal & Coke Company. We might
say here that, without reciting the proof, it convinces us
that Hatcher was the joint agent of the two coal compa-
nies to obtain this deed from the defendant; however, the
judgment below is correct and must be sustained for still
another reason. The proof conclusively shows that for
more than thirty years, the defendant and those through
whom he claims, have occupied a portion of the land in
controversy, and have had a portion of it cleared, and
a house has been constructed thereon, which for a con-

siderable time was occupied by tenants. That there was a well-defined and marked boundary line around it, including the uncleared portion, and that the defendant and his vendors. were claiming to this line. Realizing that there was no consideration for the deed and relying upon the statements of Hatcher to the effect that the deed which he presented, including the entire 1,250 acres, "did not include any of my land," he continued to occupy it as he had previously done up to the time of the filing of this suit, and was so occupying the land at the time it was conveyed to the appellant. His possession was open and notorious, and was sufficient to put appellant upon its inquiry as to the character thereof, and which inquiry would have developed the facts relative to the execution of the deed to the Mason Coal & Coke Company, even if it did not have actual notice thereof. This doctrine was upheld by this court in the case of Hopkins v. Garrard, 7 B. Monroe, 312, in the following language:

"But the fact that, notwithstanding his deed to Hopkins, which acknowledged full payment, Garrard, the grantor, remained in possession of the land, was an indication that he had or claimed some interest in the land, and should have put the subsequent vendees on an inquiry by which they would have easily learned that the purchase money was, in fact, unpaid, and probably that Garrard was holding the possession as a security for it. On the ground of notice, therefore, implied from his possession, the lien of Garrard, for his purchase money, is considered effectual against the subsequent purchaser, even beyond the effect of the *lis pendens.*"

It was again recognized and applied by this court in the cases of Sneed v. Hope, 19 Ky. Law Rep., 871; and Lyttle v. Fitzpatrick, 24 Ky. Law Rep., 93. In the last case referred to the language of this court is as follows:

"The proof by Mrs. Combs and one of her daughters is that appellee was informed by them of their claim to the land, and warned not to buy it before he purchased it of Blair. While he denies this, we are of the opinion that their possession of the property, and the fact that the deed was not signed by all the grantors, was sufficient to put him on inquiry, and under the proof in the case he cannot be regarded as a bona fide purchaser without notice. As they were in the adverse possession of the land at the time of his purchase it was void under the

champerty statute and passed no title, and the court should have dismissed his petition.''

It is insisted, however, that the doctrine laid down in the case of Behrens v. Crawford, 32 Ky. Law Rep., 1281, and cases therein referred to applies here. This doctrine is:

''Where the vendor of real estate remained in possession, his possession should be deemed to be consistent with and not hostile to the title which he had conveyed.''

The cases referred to are Griffith v. Dickens, 4 Dana, 561; Showden v. McKinney, 7 B. Monroe, 258; Barrett v. Cohern, 3 Met., 510. This rule prevails in cases where there has been no fraud, deceit or misrepresentation practiced on the vendor, but the transaction was fair, full and complete, and entered into without any concealment, or words, or actions calculated to disarm the vendor and when a consideration was paid or agreed to be paid. In the Behrens case, *supra,* as is stated in the opinion: ''The consideration for each of these conveyances was fair.'' And at the close thereof the qualifying rule contended for herein by defendant was clearly recognized by the following language:

''Appellant cites and relies upon the case of Sneed v. Hope, 16 Ky. Law Rep., 871, as supporting her contention, but the record in that case shows that Hope contended that the deed had been obtained from him through fraud and he refused to surrender possession of the property; whereas, in the case at bar no such claim is made, and her holding was not in any wise similar to that of Hope in the case of Sneed v. Hope, and other like cases, cited by appellant.''

It will not be overlooked that the deed by which it is claimed the defendant parted with his title, and under which the plaintiff claims the right to recover the land, included in it the large body of land of 1,252 acres, and it was thereby calculated to mislead and deceive.

Upon all the facts and the law as we have herein found, the judgment was proper, and is affirmed.