## Union Gas & Oil Company, et al. v. Wright, et al.

(Decided November 9, 1923.)

Appeal from Johnson Circuit Court.

1.  Corporations—Notice to Agent Notice to Company.—Notice received by local agent through the mail was notice to the company represented by the agent, and it was charged with such information as the notice contained, where it was the duty of such agent to receive mail from a post office and transmit it to the company if important.

2.    Mines and Minerals—Lessee Held to Forfeit Rights by Failure to
      Pay Lien Rentals to Grantee.—Under an oil and gas lease provid-
      ing "that all conditions between the parties hereto shall extend
      to their heirs, executors, successors and assigns," the lessee for-
      feited its rights by failure to pay lien rentals to a grantee after
      notice of the transfer.

3.    Mines and Minerals—Lease Held to Become Void on Failure to
      Pay Lien Rental Before Time Fixed.—Under an oil and gas lease
      providing that if lessee failed to begin a well within one year the
      lease should become void unless lessee should pay annually to
      the lessor 10 cents per acre, etc., the lessee forfeited the lease by
      failure to pay the rentals within the time fixed, and the lessor or
      his assignee could properly refuse to accept a rental one day after
      the expiration of a year.

HOLT, DUNCAN & HOLT, and OTTO C. GARTIN for appellants.

ROBERT H. WINN, S. S. WILLIS, WHEELER & WHEELER and
A. O. CARTER for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—
Affirming.

In February, 1916, W. H. McKenzie leased his farm of
100 acres to one Albin for oil and gas, it being stipulated
that Albin or his assigns should begin a well upon the
premises within one year from the date of the lease, and
if he failed to do so the lease should become null and void
unless the lessee should pay annually to the lessor ten
(10c) cents per acre, in which event the lease was to con-
tinue for ten years at the option of the lessee. In No-
vember, 1918, McKenzie conveyed 20 acres of his farm
to his son, Henry McKenzie, who in turn, in April, 1919,
conveyed the 20 acres to appellee, Wayne Wright. Wright
on July 8, 1920, conveyed a one-half undivided interest in
the minerals in and under the 20 acres to one Dixon,
trustee. On May 26, 1921, Dixon leased his share to R.
A. Childs for oil and gas. On June 1, 1921, Wright leased
his share in the 20 acres to Gilliam, who assigned it to
the Weideman Oil Company, and this latter concern
drilled several producing wells upon the premises and
made it valuable.

Up to this time the Union Gas & Oil Company had
never taken possession of the premises or did any work
thereon, although it held and claimed under the lease to
Albin of February 8, 1916. After conveying the 20 acres
to Wright, McKenzie sent a written notice by registered
mail to the Union Gas & Oil Company at Martha, Ken-

tucky, notifying it of his sale of the 20 acres to Wright and directing the company to pay the rentals due on the 20 acres of the lease to Wright. The next rentals were due February 8, 1921, and were paid by the company to McKenzie notwithstanding the notice. Some days after the rentals were due on February 8, 1921, the company tendered the rentals, two ($2.00) dollars, to Wayne Wright, but he declined to accept them and declared the lease void.

Appellant company notified the Weideman Oil Company and Wayne Wright of its claim under the oil and gas lease executed in February, 1916, and warned them against drilling wells upon the property, but this notice was ignored by Wayne Wright as well as by the Weideman Oil Company.

Appellant contends that it did not forfeit the Albin lease on the McKenzie lands, 20 acres of which were conveyed to Wayne Wright by the nonpayment of rentals to Wright on February 8, 1921. It is admitted that the rentals were not paid by the company to Wayne Wright until several days after the due date, February 8, 1921; but it is insisted that the payments made by the company to McKenzie, the original owner of the land, were sufficient to satisfy the conditions of the lease. It is further urged by appellant that it had no notice from Wayne Wright or from McKenzie that any part of the McKenzie lands had been conveyed to Wright, and having no notice of such conveyance it was protected by its payment of rentals to the original owner, McKenzie. The facts are these: Shortly after McKenzie conveyed the 20 acres to Wright, on April 21, 1919, McKenzie at the instance of Wright sent to the Union Gas & Oil Company, at its post office address, by registered mail, the following notice:

"NOTICE TO THE UNION GAS & OIL COMPANY:

"You will by this take notice that we have transferred 20 acres, more or less of the land to Wayne Wright by deed dated April 21st, 1919, and recorded in Deed Book —, and page——, Johnson county court records, you holding lease on said lands. We notify you to pay to Wayne Wright, all rental money falling due on said land.

"Given under our hands this the 18th day of May, 1920."

The principal place of business of the appellant company in Kentucky at that time was at or near the post

office, Martha, in Johnson county, near its operations. We find it had at that office a bookkeeper and timekeeper to whom men working for the company in the field made reports. The timekeeper, Greene, was required to go to the post office for the company's mail each day. He performed this duty for several weeks. On May 18, 1920, when McKenzie sent the registered letter containing the above copied notice through the mails to the company at Martha, Ky., Greene was in the employ of the company and one of his duties was to go to the post office and receive mail for the company. If this mail was of importance, he testifies, it was sent to the president at the company's principal headquarters in the state of Indiana for his attention, but if it was of local interest only it was attended to by the bookkeeper and Mr. Greene. According to the evidence of Ayers, the president of the company, this was the regular course of business. It is shown by the testimony of the appellees that the registered letter was actually sent through the mail to the company at Martha, Kentucky, and this evidence is supported by the receipt signed by Greene for the registered letter, which receipt was returned by the postmaster at Martha, Kentucky, to McKenzie at the post office from which the letter was sent. Greene, it is admitted, was the agent of the company whose duty it was to receive the mail at the post office, Martha.

It is appellant's contention that although the letter was received by Greene he had no authority to pay rentals or to attend to the matter of continuing leases in force, and therefore the company was not bound by the notice which was sent through the mail to the company and received by him. Greene testifies that such mail was always forwarded to the president at the company's principal office in Indiana, but he says he does not know whether he received the registered letter in question or forwarded it. The great weight of the evidence is to the effect that the registered letter containing the notice was sent by McKenzie to the company at Martha; that Greene, the agent of the company, received it and receipted for it. What became of the letter thereafter is unknown. It may have been lost by Greene or it may have been sent by him in the usual course of the business to the president of the company in Indiana.

As Greene was the agent of the company for the purpose of receiving the mail from the post office and trans-

mitting it to the office of the company, notice received by him through the mail was notice to the company and it must be charged with such information as the notice contained. This notice was given on May 18, 1920, which was several months before the rentals became due on February 8, 1921, and the company had full opportunity to take care of the payment of rentals to Wayne Wright but neglected to do so.

Some doubt has been expressed as to whether the company was bound to pay the rentals to anyone save McKenzie, the original lessor, but a statement of the terms of the contract upon this subject should be sufficient to remove this doubt. The lease contract provides that "on the payment of one dollar by second party and upon abandonment of the premises by second party, or at the expiration of rights and privileges granted, or the failure to pay rentals by second party, then this lease shall be null and void and binding on neither party. It is understood between the parties to this agreement that all conditions between the parties hereto shall extend to their heirs, executors, successors and assigns."

The lessee not only had the right to assign the lease but the lessor had the right to sell and convey the land, and, in case he did, the terms of the lease were to apply to the successor of the lessor as well as the successor of the lessee. Both parties to this litigation appear willing to give their assent to this proposition.

If it were the duty of the appellant company to comply with the terms of the notice given by McKenzie with respect to the sale of the 20 acres of the land to Wayne Wright, then, as we have seen, there was a default in the payment of the rentals within the time limited by the contract and as this was an "unless lease" it became void the moment the lessee failed to pay the rentals within the time fixed in the contract. The rentals in this case were past due and were for the period extending from February 8, 1920, to February 7, at midnight, 1921. The company withheld the payment to McKenzie till the 8th of February, which was one day after the lease expired, if the time be strictly computed, and it did not offer to pay the rentals to Wright until several days later. He was under no obligation to receive the rentals at that time. The company forfeited its right to enter upon the premises when it failed to pay the rentals on or before the last day of the given period.

It is asserted with much show of reason that the lease contract under consideration is unilateral and for that reason unenforceable, but we deem it unnecessary, owing to our conclusion above stated, to go into a consideration of this question.

Judgment affirmed.