## Hatcher v. Fields, Trustee, et al.

(Decided November 11, 1924.)

### Appeal from Floyd Circuit Court.

1. Equity—Equity Aids Vigilant and Not Those Sleeping on Rights. —Equity aids vigilant and not those who have slept on their rights.
2. Equity—Delay Held Such that Presumption of Transfer Must be Presumed.—In action for partition, where owner under whom defendants claimed had been in possession for thirty years, facts held to require presumption that interest claimed by plaintiff had been transferred to defendant's predecessor, in view of principle that equity will not aid those who have slept on their rights.

A. J. MAY for appellant.

J. C. HOPKINS and B. F. COMBS for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

James Hatcher brought this action in 1914 alleging that he was the owner of an undivided one-fifth interest in the tract of land in controversy. He prayed a division of the land. The allegations of the petition were controverted by answer; proof was taken and on the final hearing the circuit court dismissed the petition. Hatcher appeals. The facts are these:

On January 13, 1866, James S. Lane conveyed the land to his wife Elizabeth and their five children. The wife died soon thereafter. James P. Lane, one of the sons, lived on the land for over forty years. He had deeds of conveyance from two of his brothers and from his sister, Mrs. Hatcher, for their interest in the land. The other brother, Samuel G. Lane, left Kentucky soon after the civil war and was not heard from for something over fifteen years. He then returned to Kentucky, bringing with him his little daughter, and was here with his relatives some weeks. He said that he had come back to sell his interest in the farm; that his brother, James P. Lane, had offered him $300.00 for his interest but that was not enough. He offered to sell it to a neighbor for $500.00. The neighbor, a friend of James P. Lane, said to him that the latter needed the land more than he did and that he ought to sell it to his brother. After this one witness testifies that there was a meeting at the house;

that Mr. Burns, a lawyer, was there and drew the papers and Sam Lane there sold his interest in the farm to his brother, James P. Lane. Soon thereafter Sam left the state and two witnesses testify that he told them that he sold his interest in the land to James P. Lane. Another witness testifies that after this James P. Lane ran out some logs to Ashland and when he came back his wife complained that he had brought home so little money, and he said that he had sent the money to Sam to pay for Sam's interest in the land. All this was more than thirty years before this controversy arose. For all that time James P. Lane remained in possession of the land; claimed it as his own and used it in every way as his own. Sam was never heard from, never set up any claim to the land and died some years before this controversy arose. About the year 1912 James P. Lane became bankrupt and the land was sold in the bankruptcy proceeding as his property and the appellees claim under this sale.

After James P. Lane became bankrupt somebody discovered that there was no transfer of record from Samuel G. Lane to James P. Lane for his interest in the land. Appellant Hatcher then obtained deeds from the heirs of Samuel G. Lane and bases his claim to the land thereon. James P. Lane, who is a very old man, testifies that he did not buy out his brother and that Sam still owned his interest in the land when he died. But Mr. Lane is very old and infirm; old men often forget. The circumstances in view of the great length of time are conclusive that a conveyance of Sam Lane's interest in the farm must be presumed, for he knew he had this interest. He came to Kentucky for the purpose of selling it; he went away saying that he had sold it, and for over thirty years he set up no claim to the land. James P. Lane not only used it as his own for that whole time, paying taxes on it, selling timber on it and contesting rights of way over it, but in the bankruptcy proceeding had a homestead set apart to himself out of it and in every way possible recognized and claimed it as his property.

> "Juries are also instructed or advised, in more or less forcible terms, to presume *conveyances between private individuals*, in favor of the party who has proved a right to the beneficial enjoyment of the property, and whose possession is consistent with the existence of such conveyance, as is to be pre-

sumed; especially if the possession, without such conveyance, would have been unlawful, or cannot be satisfactorily explained." 1 Greenleaf on Evidence 46.

"The fact that a person is in the possession of real estate, exercising rights of ownership and performing acts of dominion, creates a presumption that he is invested with some right or title in the premises. From long possession the law sometimes presumes a grant, in order to quiet possession and make it consistent with rightful title. The tooth of time may have destroyed the deeds." 10 R. C. L., p. 876.

Equity aids the vigilant, not those who have slept on their rights. Appellant stands in the shoes of his vendors. They and their ancestor, Samuel G. Lane, certainly slept on their rights, if any they had.

Judgment affirmed.