## Union Gas & Oil Company, et al. v. Wright, et al.

(Decided ·February 3, 1928.)

(Rehearing Denied, with Modification, June 27, 1928.)

### Appeal from Johnson Circuit Court.

1. New Trial.—Plaintiffs' allegation that a lessor and lessee who were plaintiffs in a prior suit against the present plaintiff had made a champertous agreement relative to such lessee's promising to proceed to quiet title against an oil company having leases on the land, in consideration for receiving the lease of such property, and that such champertous agreement was unknown to the present plaintiffs until after the expiration of the time limitation for setting aside the judgment and ordering a new trial on the grounds of newly discovered evidence, as provided by section 344 ·held not allegations of such fraud, under Civil Code of Practice, sec. 518, as to warrant setting aside the judgment and granting a new trial; there being no duty to disclose such agreement.

2. New Trial.—Where the sum and substance of a plaintiff's petition seeking to have a judgment, barred by the 3-year limitation of Civil Code of Practice, sec. 344, set aside and a new trial granted is merely that the plaintiffs have recently discovered new evidence, the time limitation cannot be obviated under Civil Code, sec. 518, merely by designating the circumstances as fraudulent, when, as matter of fact, they are not such.

E. L. McDONALD and D. L. HAZELRIGG for appellants.

ROBERT H. WINN, WHEELER & WHEELER, S. S. WILLIS, and JOHN A NIEDING for appellees.

Opinion of the Court by Commissioner Hobson—
Affirming.

On February 8, 1916, W. H. McKenzie leased his
farm of 100 acres to A. C. Albin for oil and gas, stipulat-
ing that the lessee should begin a well on the premises
within 1 year from the date of the lease, and if he failed
to do so the lease should become null and void unless the
lessee paid annually to the lessor 10 cents an acre, in
which event the lease would continue at the option of the
lessee for 10 years, or as long as oil or gas was produced
in paying quantities. In November, 1918, McKenzie con-
veyed 20 acres of the farm to his son, Henry McKenzie,
who in April, 1919, conveyed this 20 acres to Wayne
Wright. Wright on July 8, 1920, conveyed a one-half un-
divided interest in the minerals in the 20 acres to Robert
Dixon, trustee, and on June 1, 1921, Wright leased his
half of the 20 acres to John Gillem, who assigned the
lease to the Wiedeman Oil Company, which entered upon
the land and drilled some producing wells. Up to this
time the Union Gas & Oil Company, to whom the Albin
lease had been assigned, had not taken possession of the
premises or done any work thereon. On September 22,
1921, Wayne Wright, J. C. Gillem, Robert Dixon, trustee,
R. A. Chiles, to whom Dixon had leased his share, and the
Wiedeman Oil Company brought an action against the
Union Gas & Oil Company praying that their title to the
oil and gas be quieted, and that the Union Gas & Oil Com-
pany be enjoined from claiming any rights in the prop-
erty. The case was fully prepared and on April 17, 1922,
a final judgment was entered in favor of the plaintiffs,
as prayed in the petition. The Union Gas & Oil Company
appealed to this court and the judgment was affirmed on
November 9, 1923. Union Gas & Oil Co. v. Wright, 200
Ky. 791, 255 S. W. 697. On May 17, 1927, the Union Gas
& Oil Company and the Swiss Oil Corporation brought
this suit against the plaintiffs in that action, setting out
the steps taken therein, and then alleging in their peti-
tion these facts:

Since that judgment was rendered the Swiss Oil Cor-
poration has become the owner of all the capital stock
of the Union Gas & Oil Company and the beneficial owner
of all its property, including choses in action. The plain-
tiffs have only recently learned that the former suit was
caused to be filed and prosecuted, and that the judgment
rendered therein was obtained by fraud practiced by the

defendants as follows: When the top lease was executed by Robert Dixon, trustee, to R. A. Chiles an agreement was contemporaneously entered into between them by which the existence of the lease of the Union Gas & Oil Company was recognized and Chiles agreed at his own cost to sue for the cancellation of the lease or take such other steps as might be necessary to deprive it of the oil and gas rights thereunder, and it was only after such lease should be cancelled that the top lease to Chiles was to be effective or to bind him; likewise, when Wayne Wright and wife executed their top lease to J. C. Gillem, a like agreement was also contemporaneously entered into between them by which Gillem agreed that a suit should be brought or other appropriate steps taken without expense to the lessors for the cancellation of the lease of the Union Gas & Oil Company, after which Gillem was to have and enjoy the oil and gas rights according to the top lease as modified by this agreement; but for the intermeddling of Chiles and Gillem who were not theretofore interested in the matter, and but for the illegal and champertous agreement to bring the suit and pay the costs, Dixon and Wright would not have executed the top leases and would not have brought suit to cancel the lease of the Union Gas & Oil Company; the whole scheme and plan by which the former judgment was obtained was conceived in fraud and carried to a successful termination by means of these fraudulent and illegal contracts; the top leases which were ostensibly the only agreements between the parties were intended as a deception and a blind and were wholly rendered illegal by the fraudulent and champertous side agreements which the defendants fraudulently concealed from the plaintiffs, and the plaintiffs could not have learned of same and have only recently received information thereof, and were thus prevented from pleading or otherwise presenting these facts, which would have been a good and complete defense to the cause of action asserted in the suit. They prayed that the former judgment be set aside and a new trial granted. The circuit court sustained a general demurrer to the petition. The plaintiffs appeal.

Section 344 of the Civil Code of Practice, regulating the granting of a new trial upon grounds discovered after the term at which the judgment was rendered, provides:

"But no such application shall be made more than three years after the final judgment was rendered."

As the former judgment was rendered on April 17, 1922, and this action was begun on May 17, 1927, it is apparent that no relief can be granted under this section.

Section 518 of the Code provides that the court in which a judgment has been rendered shall have power after the expiration of a term to vacate it, "for fraud practiced by the successful party in obtaining the judgment." To bring the case within this section the fraud of the successful party must be practiced in obtaining the judgment. The only thing alleged here is that the lessees made with the lessors the side agreement as charged, and that appellants did not discover this side agreement in the former action. This was not a fraud practiced in obtaining the judgment. To give the statute such a construction would make it mean that in every case practically, where new evidence was discovered which the successful party in the former suit knew of and did not produce, a new trial may be had under this section, when it is clear that by section 344 an application for a new trial on the ground of newly discovered evidence must be made in three years. The plaintiffs in the former action were in no wise called on to disclose the contract between them, and it is a misnomer to call the judgment a judgment obtained by fraud, because they did not volunteer the information as to the nature of the contract between them.

The sum and substance of the plaintiffs' petition is that the plaintiffs have recently discovered new evidence which they did not discover before the judgment was rendered and could not reasonably have discovered. This is here nothing more than an application for a new trial for newly discovered evidence and calling it a fraud adds nothing to the facts.

Judgment affirmed.