**POWELL v. DALLAS COUNTY LEVEE IMP. DIST. NO. 6.**

No. 13428.

Court of Civil Appeals of Texas. Dallas.

June 25, 1943.

Rehearing Denied July 23, 1943.

Storey, Sanders, Sherrill & Armstrong, of Dallas, for appellant.

Saner, Saner & Jack, Alfred Sallinger, I. M. Williams, G. Ray Lee, and R. T. Meador, all of Dallas, for appellees.

LOONEY, Justice.

The Dallas County Levee Improvement District No. 6 was created in 1919, containing 4,200 acres of land situated in the Counties of Dallas, Rockwall and Kaufman. The District issued and sold to the investing public construction bonds aggregating $288,000 bearing 6% interest per annum. The assessment of Benefit Plan of Taxation was adopted, and benefits assessed as basis were $100 per acre. Soon after being completed, the levees broke in a number of places and have never been repaired, the lands of the District being subject to overflow with each successive rain of sufficient magnitude, same as before the levees were constructed; only about 300 acres in the District are cultivated; the remainder is idle, covered with brush, weeds and grass, and profitless. Taxes levied during the last dozen or more years are delinquent; the District has only $52.34 in its treasury, and the evidence amply justifies the conclusion that the lands in the District are not worth, nor could they be sold for, more than an average of $10 per acre. It further appeared that as of January 1, 1943, including bonds not in suit, judgments obtained by bondholders, and accrued interest, the indebtedness of the District amounted to the sum of $400,-000. So, with its levees broken, lands subject to overflow, idle, unproductive, profitless, its treasury empty, taxes assessed delinquent for more than a dozen years, its outstanding indebtedness far in excess of the total value of all lands in the District, the conclusion is inescapable that the District has definitely reached a stalemate, in fact, is hopelessly and irretrievably insolvent.

In this status, C. M. Powell, the appellant, assignee of four judgments aggregating $39,149.20, against the District, representing part of the bond issue, brought this action for mandamus to compel the collection of delinquent taxes and to require the supervisors of the District to apply the proceeds, as well as all current taxes collected, exclusively to the payment of said judgments, and, if necessary, the District be ordered to levy sufficient additional tax to pay appellant's claim in full.

The District, through its supervisors, answered, in substance denying appellant's right to issuance of mandamus as prayed, contending that reasonable efforts were being put forth to collect the delinquent taxes; alleged the insolvency of the District, and challenged appellant's right to preferential payment.

J. W. Kincaid, Republic Building Company, Taxis Investment Company and other bondholding creditors were permitted to intervene and set up their claims against the District; joined in appellant's prayer for mandamus, alleged the insolvency of the District, but denied the right of appellant to preferential payment, praying for an equitable proration of taxes collected among all creditors of the District in proportion to the amount of their respective claims.

Judgment was rendered, granting appellant's prayer for mandamus, awarding interveners, as well as all bondholders of the District, pro rata participation with appellant in the proceeds of all taxes collected. To this judgment, appellant perfected an appeal and has assigned error.

The only question that we deem worthy of discussion is the contention of appellant that the court erred in denying him priority, and in decreeing that all taxes collected by the District be shared pro rata by the appellant and interveners, as well as other bondholders of the District. Appellant's claim to preferential payment is based on the contention that he has been diligent in prosecuting his remedies, in applying for the writ of mandamus and in causing the issuance of executions on the judgments, whereas none of the other bondholders had shown such diligence.

The record discloses that over a period of years, appellant acquired, and at present owns, $327,000 of the bonded indebtedness of the District, including the judgments declared upon; also, beginning about 1924, up to 1930, purchased and now owns 2,000 acres of the land within the District (practically one-half), but has never paid any taxes to the District on these lands. The record further discloses that appellant kept in close touch and was familiar with the financial condition of the District, knew it was without assets and in an insolvent condition. In view of the situation disclosed by the undisputed evidence, we do not think the maxim "Equity aids only the vigilant," relied upon by the

appellant, has any application whatever to the case.

■ The District being insolvent, its bondholders had equal rights and are entitled to share pro rata in all taxes collected. Appellant's suit, seeking mandamus to compel collection of taxes, in our opinion, operates as a class suit for the benefit of all bondholders having enforceable claims against the District, and taxes when collected should be administered as a trust fund—not for the benefit of any particular bondholder or bondholders, but for all. See City and County of Dallas Levee Imp. Dist. ex rel Simond v. Industrial Properties Corporation, 5 Cir., 89 F.2d 731, 734; also, City and County of Dallas Levee Imp. Dist. v. Griffith, Tex.Civ.App., 165 S.W.2d 477 writ refused, want of merit.

■ Appellant, being perfectly familiar with the financial status of the District, knew that it was without assets and insolvent, hence the issuance of executions on the judgments, as plead, and the return thereon by the sheriff, were idle and futile performances, without legal significance, except probably prevented the judgments from becoming dormant, but created no right and gave appellant no preference over other bondholders. Disposing of a similar contention in Hulbert v. Hulbert, 216 N.Y. 430, 111 N.E. 70, 73, L.R.A.1916D, 661, Ann. Cas.1917D, 180, the Court of Appeals of New York, among other things, said: "In the case now under consideration the liens of the three judgments attached simultaneously to the property of Hulbert upon his acquisition of the interest derived from his father. By virtue of the statute they were at that time equal liens entitled to share pro rata in the proceeds of the debtor's property. Such being the case, how can it be held that the issuing of the execution and the advertising by the sheriff—acts which would be an idle ceremony—should give a preference to the creditor? Once a lien is acquired it is a right which cannot be lost by the performance of an unnecessary act by another creditor. * * * The principle that equity favors the diligent has no application where one creditor displays his diligence in the doing of useless and unnecessary things. The liens of the three judgments attached when Hulbert acquired the property. The issuing of an execution upon one of the judgments could not affect the relative rank of the liens as between themselves. * * *"

■ The chaotic and discouraging financial status of the District having been contributed to by the failure of appellant to pay taxes assessed against the lands in the District owned by him, he was not without fault, and, in our opinion, was in no position to invoke the principle that "Equity aids only the vigilant." In Kentland, etc., Co. v. Elswick, 167 Ky. 593, 181 S.W. 181, 182, the court said: "We fully recognize this principle ['Equity aids only the vigilant'] as being sound and just, but it must be remembered that it is qualified by another principle of equity, to the effect that the party seeking to take advantage of the maxim must be free from fault, and he must have done nothing to lull his adversary into repose, thereby obstructing and preventing vigilance on the part of the latter."

■■ The authorities the country over, in our opinion, are to the effect that where, as in the instant case, the district is hopelessly insolvent and the funds on hand, or available, are insufficient to pay all bonded creditors in full, mandamus will not lie in favor of one to enforce payment in full of his claim. In State v. Little River Drainage Dist., 334 Mo. 753, 68 S.W.2d 671, the court held (Syl. 7) that: "Mandamus held not to lie in favor of holder of matured drainage bonds to enforce payment in full from funds on hand, where drainage district was insolvent, since holder was entitled only to share ratably in funds on hand and those collected in future. (Mo. St.Ann. § 10743 et seq., p. 3463 et seq. [Mo. R.S.A. § 12324])" Also in Meyers v. City of Idaho Falls, 52 Idaho 81, 11 P.2d 626, the court held (Syl. 2 and 7) that: "2. Funds collected by city by special assessments are trust funds pledged to payment of 'public improvement bonds' issued against special improvement districts (C.S. § 3999 et seq. and § 4121 et seq.) * * * 7. Where, by reason of default in payment of special assessment and general taxes on land in special improvement districts, final fund is insufficient to pay all serial bonds outstanding, fund must be distributed pro rata among unpaid bonds, regardless of numerical priority (C.S. § 4021, 4149, 4023, 4150)." And in Groner v. United States ex rel. Snower, 8 Cir., 73 F.2d 126, the court held (Syl. 2) that: "Where Missouri drainage district is insolvent, payment of bonds should be made ratably and all outstanding bonds, matured and unmatured, must be considered in apportionment of fund;

whereas, if district is solvent, apportionment must still be made, but only among matured bonds and coupons." The case of Voorhies v. Mayor, 70 Tex. 331–340, 7 S.W. 679, 683, chiefly relied upon by the appellant, did not announce a contrary doctrine; among other things, the court said: "The grounds upon which a creditor should be restricted to a pro rata payment, we are of the opinion, do not exist in this case. If there be a fund to which more than one creditor is compelled to look as the only source from which their claims can be paid, and this be insufficient to pay all in full, then it is manifestly just, none of the claims having a preference, that the fund should be distributed pro rata."

The judgment of the court below, in our opinion, being correct, is affirmed.

Affirmed.