## Swiss Oil Corporation v. Fyffe et al.

Dec. 14, 1943.

180

E. L. McDonald and Wells & Wells for appellant.

Wheeler & Wheeler for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing in part and affirming in part.

On May 18, 1916, appellees, Felix Fyffe and his wife, executed and delivered to A. C. Albin an oil and gas lease on their farm in Johnson County, Kentucky, whereby they granted to the lessee the oil and gas in and under the premises described, together with the right to enter thereon for the purpose of drilling and operating for oil and gas. In consideration of the lease, the lessors retained as royalty one-eighth (⅛) of the oil, and the lessee agreed to pay One Hundred Dollars ($100) annually for each gas well from which gas was found in sufficient quantities to "transport." The lessee was additionally granted the right to use sufficient gas, oil, and water to run all machinery for operating the wells. The lease gave the right to the lessee to assign it and the rights thereunder to any person the lessee desired, and upon such assignment the liabilities incurred under the lease were to cease as to the original lessee, the lessors agreeing that they would look to the assignees of the lessee for the fulfillment of the obligations originally incurred by the lessee. Some time after the lease was executed to Albin, the latter assigned it to the Union Gas & Oil Company, which drilled five (5) wells on the farm, two of which produced gas alone, and three of which produced oil. In the latter part of the year 1923 appellees, in conjunction with other lessors in the vicinity, demanded further development of the property on penalty of forfeiture. As a result of such demand, the Union Gas & Oil Company entered into a contract with appellees on the thirty-first day of December, 1923, whereby, in consideration of being relieved of liability for failure to further develop the lease, the Company agreed to pay appellees annual rental in the amount of Five Hundred Thirty-Six Dollars ($536), being the equivalent it would have been required to pay under the terms of the lease, had it successfully developed the undeveloped portion of the lease on a basis of one gas well for each twenty-five (25) acres and one oil well for each five (5) acres. The contract provided that in the event the Company drilled additional wells that should not produce gas in paying quantities, the payment for such wells should cease.

In June, 1924, the Company drilled the sixth well on the farm, which it is alleged in the petition was a gas well. In January, 1926, the Union Gas & Oil Company sold all its leases in Lawrence and Johnson Counties to appellant, Swiss Oil Corporation. The assignment was made subject to all the terms and provisions of the leases. Appellant continued operating the lease on appellees' farm, paid the royalty for the oil produced, and paid the rental for the gas produced and which was sold to the United Fuel Gas Company under a contract the latter had entered into with the Union Gas & Oil Company. Appellant continued to pay the royalties, rentals, and delay rentals under the contract, according to records and memoranda turned over to it by its assignor. On August 1, 1927, due to decreased productivity of the wells, appellant ceased marketing and selling the gas, and none has been marketed or sold since that time. However, it continued to use the gas from the wells in the operation of pumping the oil wells, and to supply gas for domestic use of the lessors. In 1929 appellant commenced on a large scale the operation of repressuring oil producing sands for the purpose of increasing the production of its oil wells. For this purpose it constructed a large compressor station requiring large quantities of gas which, mixed with air, was forced into the oil producing sands through intake wells drilled for the purpose. As a result of this activity the productivity of the oil wells on appellees' farm was approximately doubled. The compressor station served to repressure the oil wells in all of the leases owned by appellant in that vicinity, and gas from all the leases was piped into a common reserve for the purpose. The gas used from the common reserve for the purpose of repressuring the oil wells on appellees' property was greater in quantity than the gas piped into the common reserve from the gas wells on the lease.

On March 2, 1932, appellant completed the drilling of a seventh well under the lease. This well was drilled to a deeper sand than those previously drilled. The gas obtained from this well was impregnated with sulphur, rendering it valueless, although it was shown in the evidence that the sulphur veins could have been cased off, in which event the well would have produced not in excess of eleven thousand four hundred (11,400) cubic feet per day. It was proved that a well must produce one hundred thousand (100,000) cubic feet of gas per day

to attain the standard of marketability. Conceiving that further development on the farm was futile, and being unwilling to further continue the payment of delay rentals required under the contract of December 31, 1923, and for the admitted purpose of ridding itself of liability in respect to the payment of delay rentals for the undeveloped portion of the lease, appellant assigned the lease on such undeveloped portion of the farm to Theodore R. Fisher, of Fayette County. The assignment reserved to appellant the wells, equipment, and rights pertaining to their operation. Appellees instituted this action on October 24, 1933, seeking recovery of appellant of the amounts due as delay rentals commencing August 10, 1933, under the contract dated December 31, 1923. The petition was amended November 15, 1939, by which amendment the amount of recovery was increased to include the amounts due under the contract between the filing of the original and amended petitions. The total amount sought to be recovered was Four Thousand Four Hundred Six Dollars ($4,406). The petition alleged that the assignment of the lease by the Swiss Oil Corporation to Theodore R. Fisher was void, without consideration, and was made for the express purpose of avoiding payment by the Corporation of the rentals under the agreement. Appropriate pleadings set up various defenses, one of which will be developed in the course of the opinion, the balance of which it will be unnecessary to discuss, because of the conclusion hereinafter expressed.

With the answer appellant filed counterclaim for Five Hundred Sixty Dollars ($560), which it alleged was due it by reason of paying, "through inadvertence and mistake," excessive rentals due under the contract from the year 1926 to 1932 inclusive. In support of this claim appellant argues that, by reason of its having drilled Well No. 6, the amount due under the contract should have been reduced from Five Hundred Thirty-Six Dollars ($536) per year to Four Hundred Thirty-Six Dollars ($436) per year, although it continued to pay at the former rate. The next claim is in the amount of Seven Hundred Dollars ($700), paid "through inadvertence and mistake," as annual rental for the years 1928 to 1934 inclusive on Well No. 1, although gas was not produced in sufficient quantities to transport, and none was marketed from the well. The next claim is in the amount of Two Hundred Dollars ($200), representing annual rentals paid "through inadvertence and mis-

take'' for the years 1927 and 1928 on account of Well No. 5, which it was alleged was operated as an oil well, and for which no gas well rental was due. The fourth and last claim was for the amount allegedly due on account of the payment, ''through inadvertence and mistake,'' of Two Hundred Dollars ($200), representing annual rentals paid for the years 1932 and 1933 on account of Well No. 7, from which marketable gas was not produced in sufficient quantities to transport, and for which no rental was due under the terms of the lease and contract. We will first discuss the rights of the parties under the allegations and proof of the petition.

It will be noted that no claim is made for any rentals which became due previous to the assignment of the lease to Theodore R. Fisher, and no claim is made for rentals or royalties due on that part of the lease which appellant retained in the assignment to Fisher. In Mills-Willingham, Law of Oil and Gas, Sec. 146, p. 214, the author said: ''The assignee in severalty of a part of the lease is not a sub-lessee. This results from the divisibility of the commercial lease in its present form. It contemplates that when part has been assigned the several portions are thereafter (for certain purposes only) to be regarded as separate leases. So the assignee may pay his delay rentals and maintain his lease or may fail to pay and forfeit without being affected by, and without affecting, the unassigned portion.'' The right to assign a portion of a lease was upheld in Union Gas & Oil Co. v. Wright, 200 Ky. 791, 255 S. W. 697, and that such an assignment may effect such a separation of the lease as to create entirely different liabilities on owners of the respective portions with respect to the obligation to develop has been recognized by this Court in American Wholesale Corp. v. F. & S. Oil & Gas Co., 242 Ky. 356, 46 S. W. (2d) 498. The liability of an assignee for the payment of delay rentals after an assignment by him is not the same as that of the original lessee after assignment by him. In the first instance there is a mere privity of estate, which is terminated by a new assignment of the lease made by the assignee; while in the latter instance there is a privity of contract, which does not necessarily terminate upon the assignment of the lease. So, as between appellant and appellees, the liability rests on privity of estate, which, according to the universal holding, terminates upon assignment of the lease by the assignee, unless such assignment be fraudu-

lent. 32 Am. Juris., Sec. 386, pp. 326-327. The fraud which prevents determination of the assignee's liability for rent for the term of the lease accruing subsequent to a reassignment must arise from such colorable character of the assignment as does not actually terminate the assignee's interest in the leasehold estate. In other words, if the assignment does not actually divest the assignee of his right of enjoyment of the lease, his liability thereunder does not cease or determine. But if, by the assignment, the assignee divests himself of the estate and vests such estate in his assignee, it is not a fraud upon the lessor if the assignee assigns it to another for the express purpose of terminating his future liability for rent. Nor is it material that the reassignment is made without valuable consideration, or that the reassignment is made to one financially able to meet the liabilities imposed upon the holder of the leasehold. This proposition has been settled in Muldoon, etc., v. Hite, 6 Ky. Law Rep. 663; Meyer Bros.' Assignee v. Gaertner, 106 Ky. 481, 50 S. W. 971, 21 Ky. Law Rep. 52, 45 L. R. A. 513; Alexander v. Theatre Realty Corp., 253 Ky. 674, 70 S. W. (2d) 380; and Entroth Shoe Co. v. Johnson, 260 Ky. 309, 85 S. W. (2d) 686. In Meyer Bros.' Assignee v. Gaertner, supra [106 Ky. 481, 50 S. W. 972], the Court quotes with approval from Taylor, on Landlord and Tenant, Vol. 2, Sec. 452, as follows: " 'An assignee always discharges himself from liability for subsequent breaches, in respect to rent as well as to other covenants, by assigning over, though it be done for the express purpose of getting rid of his responsibility, and although the second assignee neither takes possession nor receives the lease. And he may assign to a beggar, a feme covert, or to a person who is on the eve of quitting the country forever, provided the assignment shall be executed before his departure, and even although the assignee may receive from the assignor a premium as an inducement to accept the transfer.' " In Alexander v. Theatre Realty Corp., supra [253 Ky. 674, 70 S. W. (2d) 384, the Court said: " * * * the statement is made occasionally that the liability for rent arising solely out of privity of estate may be terminated, even by the lessee, by an assignment to an irresponsible person, without the landlord's consent. * * * It is admitted that this may be done by an assignee from the lessee, since there has never been any privity of contract between him and the lessor." It will thus be

seen that it is well settled that, where a mere privity of estate exists between the lessor and the assignee or his lessee, the assignee, by reassignment rids himself of liability, provided the assignment is made in good faith and actually divests the assignee of the privileges of the lease. But it is suggested, although the proof shows the contrary to be true, that there is no such person as Theodore R. Fisher, and that the title to the leasehold did not pass by the assignment. Mr. Fisher was made a party to this action, although he did not defend. Summons was issued, and the return by the Sheriff of Fayette County shows the summons to have been executed on him. One of the witnesses for appellant testified that he was acquainted with Theodore R. Fisher, the party to this action, and the assignee of the lease, and that he is a real, and not a fictitious person. From what has been said, it is apparent that the Court erred in allowing appellee's to recover of appellant on the matters alleged in the petition.

We will now consider the claims of appellant presented in its counter-claim. The contention that it should be permitted to recover for payments made under the contract "through inadvertence and mistake" is bottomed upon the principle announced in Gratz v. Redd, 43 Ky. 178, 189, 190, 4 B. Mon. 178, 189, 190, as follows: "It was determined by this Court in the case of Underwood v. Brockman et al., 4 Dana 309 [29 Am. Dec. 407], and in the case of Ray & Thornton v. Bank of Kentucky, 3 B. Mon. [510] 513, [39 Am. Dec. 479], that where money has been paid under a clear and palpable mistake of either law or fact, or both, essentially bearing upon and affecting or superinducing the payment, without cause or consideration, and which in law, honor and conscience, was not due and payable, and which in honor, morality and good conscience, ought not to be retained, it may be recovered back." We are of the opinion that that rule is not applicable to the facts of this case. The mistake, either of law or fact, to be the basis of such a claim, must clearly be shown actually to have been a mistake. We are not convinced from the entire record that appellant was mistaken, either as to the law governing its rights under the contract of December, 1923, or the facts upon which it relies as the basis for rebate of the rentals and delay rentals for which it now alleges it was not liable. It is altogether possible that appellant, rather than subject itself to a demand to further develop the

property, considered it to be advantageous to pay the rentals and avert a controversy similar to the one encountered by the United Gas & Oil Company in 1923. By the drilling of Well No. 7 appellant demonstrated that up to that time it considered the lease to be valuable. Well No. 7 was drilled in deeper sand than the wells previously drilled on the property, and no doubt the latter would have been reopened and drilled to the deeper sand, had marketable gas in paying quantities been found in No. 7. The record is not clear that appellant did not continue to pay the rentals on the nonproductive wells for the purpose of retaining the right to explore them to greater depth. But, be that as it may, it was fully informed of all the facts in respect to the entire situation, and it certainly cannot now maintain that it was mistaken in respect to the facts. Certainly, if a mistake was made, the exercise of reasonable diligence would have disclosed to appellant all the facts necessary for it to conclude that it was not liable for the rentals it now seeks to cover back. Appellant seeks the aid of equity in support of its counter-claim; but one of the maxims of equity is: "Equity aids the vigilant, not those who have slept on their rights." Hatcher v. Fields, 205 Ky. 462, 266 S. W. 18, 19. At all times the payments complained of were made, appellant knew, or by the exercise of reasonable vigilance could have discovered, from data in its exclusive possession, that the payments were not due, if such were a fact; and, while the maxim above quoted is qualified by the principle that parties seeking to take advantage of it must be free from fault (Kentland Coal & Coke Co. v. Elswick, 167 Ky. 593, 181 S. W. 181), there is no showing in this case that when the payments were made appellees had any knowledge that the payments in full were not due in accordance with the terms of this contract. Courts almost universally hold that the operator of a leasehold is in better position to determine that gas has been produced in paying quantities than the owner of the leased premises.

In addition to the facts related above, appellant continuously used gas from the wells for the purpose of repressuring the oil wells, and, while the lease gave it the right to use gas in the operation of oil wells, it could not have been contemplated that this extraordinary use was to be made in their operation. Repressuring was not a common practice at the time the lease was executed. It is not unreasonable to infer that this ex-

traordinary use of the gas from the wells on the leased premises was the factor motivating appellant in continuing the rentals on the property. That being true, and taking into consideration the fact that the data from which it could have been determined that the gas was not being produced in paying quantities was in the exclusive possession and knowledge of appellant, we are of the opinion it is not entitled to recover under the counter-claim.

The judgment is reversed on the appeal, with directions that it be set aside and another entered in conformity with this opinion. The judgment is affirmed on the cross-appeal.