Case 109—ACTION BY R. A. BURTON SUPERINTENDENT OF SCHOOLS OF LINCOLN COUNTY BY COMMON-WEALTH, AND BY ELIZA J. LUSK SUPERINTENDENT OF SCHOOLS OF GARRARD COUNTY BY COMMON-WEALTH, AGAINST B. F. GRAZIANI AND OTHERS ON A BOND FOR THE SALE OF SCHOOL BOOKS.—Nov. 22.

## Graziani v. Commonwealth &c.

Appeal from Lincoln Circuit Court.

W. C. BELL, Circuit Judge.

Judgment for the Plaintiff, Defendant appeals.— Reversed.

1. Schools and School Districts—Adoption of Text Books—Liability of Surety on Bond.—Ky. St. 1903, §4424, imposes conditions upon the right of publishers to sell school books in Kentucky, requiring a bond conditioned that the books, will be sold as cheaply as in other States, etc. Section 4423 makes it the duty of the county board of examiners to adopt once in five years the books to be used in their counties; prohibits the adoption of books the publishers of which have not given the bond required by section 4424; and provides that, on a breach of the bond in any county, the superintendent thereof shall bring suit for forfeiture. Held, that the surety on a bond, under section 4424, was not liable for his principals' violation of their agreement as to the books adopted prior to the execution of the bond.

2. Principal and Surety—Liability of Surety—The liability of a
surety on a bond is to be determined by the bond itself, and it
may not be extended in its construction by implication or in-
ference beyond the fair scope of its terms.

McQUOWN & BROWN and BECKNER & JOUETT attorneys
for the appellant.

### POINTS AND AUTHORITIES.

1. No liability until books adopted after the action of bond.
Only adoption alleged in 1898. Statute shows liabilty on adoption.
Bond shows that liabilty was only after adoption.
2. No consideration for the bond. Mistake of law and fact.
3. The bond invalid as a Statutory Obligation.

### AUTHORITIES CITED.

Ky. Statutes Section 4423, 4424; Johnso v. Ginn & Co. 20 Ky.
L. R. 1475; Commonwealth v. Ginn & Co. 23 Ky. L. R. 521; 27
A. & E. Ency. Law, 2d Ed., 441; Warfiels v. Brand, 13 Bush
77; 7 A. & E. Ency of Law, p. 976; Higgins v. Commonwealth, 94
Ky. 54.

L. L. WALKER, W. J. WILLIAMS, M. C. SAUFLEY, J.

C. BECKHAM & SON and BEARD & MARSHALL, for appellee.

(No brief.)

OPINION BY JUDGE LASSING—Reversing.

In August, 1901, the superintendent of public
schools of Garrard county, Ky., filed suit in the Gar-
rard circuit court seeking to recover of B. F. Graz-
iani the penal sum of $10,000 for the alleged breach
of a bond executed May 8, 1901, by Ginn & Co., pub-
lishers of text-books, with Graziani as surety. Ginn
& Company are non-residents of the State of Ken-
tucky, and the suit was against Graziani, the resident
surety, who alone was before the court. On a change
of venue, the suit was transferred to the Lincoln Cir-
cuit court for trial. A demurrer was filed to the
petition, and overruled. Defendant answered, set-
ting up several grounds of defense. A demurrer was

sustained to each ground and to the entire answer and defendant declining to plead further, judgment was rendered against him for $10,000, and from that judgment the defendant, Graziani, prosecutes this appeal.

The pleadings show that Ginn & Company have executed two publisher's bonds to the Commonwealth of Kentucky, the first in October, 1896, and the last in May, 1901; that the county board of examiners for Garrard county, on July 16, 1898, adopted a list of text books for use in the common schools of Garrard county for five years; that no other adoption was made by them after the execution of the bond above referred to, on May 8, 1901, and before the filing of this suit; that the book "Montgomery's Leading Facts" was among the text-books adopted by said board on July 16, 1898. By the demurrer to the petition appellant raised the question of his liability upon the bond given after the adoption had been made in Garrard county. Section 4424, Ky. St. 1903, provides that the publisher who desires the privilege of selling his books in Kentucky shall first file with the superintendent of public instruction sample copies of his books, with prices for same, and he shall execute a bond in the sum of $10,000, with resident surety, which, when accepted and approved by the superintendent of public instruction, shall be filed in his office, and he shall, within 10 days thereafter, forward to each county superintendent a certified copy of the bond. Section 4423, Ky. St. 1903, makes it the duty of the board of examiners of each county to adopt once in five years the text-books for use in the public schools of that county, and it further provides that they shall not adopt any text-book or books, the publisher of which has not given bond as provided for in section 4424. Section 4423 further provides: "That it shall be the duty of the county superintendent to

make and keep a record of the adoption of text-books
and to see that the adopted list of text-books is es-
tablished and maintained in all the public schools in
the county; and it shall be the further duty of the
county superintendent to file and keep in his office
the copy of the bond of the publisher or person sell-
ing text-books (executed) before the ex officio mem-
bers of the State Board of Education and forwarded
to him by the superintendent of public instruction;
and when any of the books named in the said bond
shall be adopted for the use of his county, and there
is a breach of, or a failure to comply with, any of
the provisions of the bond in his county by the par-
ties executing the same, he shall bring suit in the
circuit court of his county for forfeiture of said
bond," etc.

The purpose. of the lawmakers in requiring that
sample copies of the books which any publisher de-
sired to offer for sale should first be filed with .the
superintendent of public instruction evidently was
that this official—the head of the great public school
system of our State—might have opportunity to pass
upon the suitableness of the books so offered for use
in the public schools, before they might be offered
for adoption to the county boards; and hence the
first requisite is that sample copies of the books
proposed for sale must be filed with the State Super-
intendent of Public Instruction; and they must be
accompanied by a statement of the price at which
each will be sold. Such books being found accept-
able to the superintendent of public instruction, the
bond required by section 4424 must be executed by
the publisher, approved by the superintendent of
public instruction, and a copy thereof certified to the
county superintendents, before any legal adoption
can be made of any of the books embraced in the list
covered by the bond. Before the law has been com-

plied with in this particular, no legal adoption could be made by any county board of examiners, and there could be no liability on the bond until there had been a legal adoption.

The pleadings show that the adoption of the book, "Montgomery's Leading Facts" by the county board of examiners for Garrard county took place in July, 1898; that the bond sued on was not executed until May, 1901, and that the publishers, Ginn & Company, have sold the book, "Montgomery's Leading Facts" at a less price in the state of Indiana than they have in Kentucky. When the adoption was made in Garrard county in 1898 the bond of 1896 was then in full force and effect. The adoption was made upon the strength of that bond and its guaranty to the commonwealth to furnish to the school children of Kentucky the textbooks enumerated therein for the prices therein named. The bond sued on had not then been executed, and was not executed for nearly three years thereafter. The surety in the bond of 1896 was different from the surety in the bond of 1901. No adoption of any book enumerated in the bond of 1901 has been made by Garrard county since the execution of the bond of 1901, and before the filing of this suit. The covenant of the bond is as follows: "Now, therefore, party of the first part (Ginn & Company) hereby binds himself, or itself, to pay to the party of the second part (the Commonwealth of Kentucky) ten thousand dollars ($10,000), as agreed liquidated damages on the adoption of any or all of his said school text-books herein listed, by any county of this State on conditions following, viz.: (1) That the retail price of said books sold to the patrons or pupils of any common school in any county adopting same, shall not exceed the lowest retail price hereafter fixed by said party of the first part for the sale of said text-books in any State or section of the country. (2) That

the said special retail price shall not, at any time, exceed the price fixed and filed in the office of the superintendent of public instruction, and set out herein. (3) The party of the first part will arrange with local dealers or agents to sell such text-books in sufficient quantities to supply the patrons and pupils of the common schools in any county adopting same, at the special retail price herein provided for and set out. (4) That party of the first part will send direct, postage or express prepaid, to any patron or pupil of the common schools in any county adopting same, on receipt, in cash or its equivalent, of the retail price of any book, as set out herein. (5) That the party of the first part will furnish any patron or pupil the revised or new edition of any of the said books, ordered at his option, and at the price herein set out. (6) That any and all text-books sold to pupils or patrons of the common schools, or to any book dealer for same, in any county adopting same, in this State, by the party of the first part, or his agent, shall be equal in paper, binding, typography, and in every other respect, to the sample copy filed in the office of the superintendent of public instruction. Now, the conditions of this bond are understood to be such that if the party of the first part shall violate any of the foregoing conditions, or fail to comply with any of the provisions of this bond, in honor and good faith, in selling any book, or in the conducting of his business at the office of the party of the first part, or in any county adopting any one or more of its books, then this bond shall be valid and binding, and same shall be paid to the county superintendent of such county where the violation occurs, or where any person suffering from any violation of its conditions resides, for the use and benefit of the school fund of the common schools of said county, otherwise to be null and void. This bond is executed in conformity with the requirements of sections 61 and 62 of

the common school law, and the undersigned principal and sureties agree and undertake that said principal shall comply with all the requirements of said sections with respect to the publishers or persons selling text-books adopted by any county in this State.''

It will thus be seen that the bond provides altogether against violations of its provisions that may occur after its acceptance and approval by the superintendent of public instruction, and does not even by implication provide for violations of the school laws that may have occurred before its execution. It provides against violations of its articles or conditions as to the sale of books after their adoption, which cannot occur before the execution of the bond. And it expressly states that it is executed in conformity to sections 61 and 62 of the common school laws, and these sections expressly prohibit any adoption until after the bond has been executed and approved as provided for in section 4424, Ky. St. 1903. In the case of Johnson v. Ginn & Co., 105 Ky., 654 49 S. W. 470, 20 Ky. Law Rep. 1475, this court held that the execution of the bond is a condition precedent to the adoption of the text-books by the examiners. No adoption by a board of examiners could possibly relate to the execution of a bond at some future date. Clearly, the liability of the surety in this bond is to be determined by the bond itself; and this may not be extended in its construction by implication or inference beyond the fair scope of its terms. 27A. & E. Enc. of Law, p. 441; Warfield v. Brand, 13 Bush, 77.

Tested by this rule, there can be no liability under the bond executed in May, 1901, for breach of contract under an adoption made in July, 1898, and the trial court should have sustained the demurrer to the petition. And this cause is now reversed and remanded, with instructions so to do, and for further proceedings consistent with this opinion.