## Union Gas & Oil Company v. Indian-Tex Petroleum Company, et al.

(Decided February 8, 1924.)

### Appeal from Johnson Circuit Court.

1. Mines and Minerals—Lease Construed as to Time for Payment of Lien Rent.—Where lease, requiring drilling of well within twelve months or payment of annual rent of 10 cents per acre for each year's delay in drilling, was dated and began on February 9, 1916, and no well was commenced within twelve months thereafter, it was at least incumbent on lessee to pay, tender, or deposit the rentals within the second year, which ended at midnight on February 8, 1918.

2. Evidence—Date of Check Not Evidentiary as to when Mailed.— The fact that a check tendered in payment of rental under oil lease was dated February 1st was not evidentiary as to when it was mailed.

3. Mines and Minerals—Burden of Proof on Plaintiff Lessee Suing to Cancel Another Lease.—In action by lessee in oil lease to have another lease canceled and its title to the leasehold quieted, the burden is upon plaintiff to prove its denied allegation of payment of rentals before the expiration of time allowed therefor.

4. Estoppel—Facts Relied on Must be Pleaded.—Facts relied on as an estoppel must be pleaded.

5. Mines and Minerals—Part Owner of Land Held Not Estopped by Acts of Others to Claim Forfeiture of Oil Lease.—Where life tenant executed oil lease on entire tract, as he had a right to do under deeds of the land to his children, and refused to accept rentals tendered after the date that they should have been paid, the fact that some of the children, owning only part of the land, permitted the lessee to develop their portions, did not estop another child from claiming that the lease was forfeited.

FRED M. VINSON and HOLT, DUNCAN & HOLT for appellant.

O'REAR, FOWLER & WALLACE and S. S. WILLIS for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

In 1913, T. C. Rose was the owner and in possession of a tract of land containing 250 acres, more or less,

which he divided among his three sons, John Rose, Charles C. Rose, and Jesse M. Rose. He executed a deed to each of them for his portion of the farm, retaining unto himself, however, in each deed, "full control of said land, mineral, oil, timber, etc., his lifetime."

After these deeds had been delivered and recorded, and on the 9th day of February, 1916, T. C. Rose, his three sons and their wives jointly executed and delivered to one A. C. Albin an oil and gas lease upon the whole tract, which is described therein as a single boundary.

On April 17, 1917, Albin assigned the lease to Ayers and Millikan, who in a few days assigned same to the appellant, Union Gas and Oil Company.

On the 26th day of April, 1922, Jesse M. Rose and his wife executed and delivered to R. A. Childs and others an oil and gas lease upon the 75 acres deeded to Jesse by his father, T. C. Rose, as above indicated. A few days later, Childs and his associates assigned this lease to appellee Indian-Tex Petroleum Company.

By this action against the Indian-Tex Petroleum Company and Jesse Rose, the Union Gas & Oil Company, setting up its lease and alleging compliance therewith, sought to have the lease of the Indian-Tex Pertoleum Company cancelled, and its own title to the leasehold quieted. By their answer and counterclaim defendants attacked the validity of the plaintiff's lease, denied its alleged compliance therewith, and asked that it be cancelled, and that the title of the Indian-Tex Petroleum Company to the leasehold on Jesse Rose's tract be quieted.

A traverse of this pleading completed the issues, and upon a trial, the chancellor dismissed the petition and sustained the counter claim, and from that judgment the plaintiff has appealed.

The lease to Albin, assuming its validity, contained the provision:

"In case no well is commenced within twelve months from this date, then this grant shall be null and void, unless the second party shall thereafter pay at the rate of ten cents per acre for each year drilling is delayed."

It also was stipulated therein that:

> "The deposit to the credit of the first party in any bank doing business in Blaine, Ky., will be a good and sufficient payment for any money falling due on the grant."

No well was commenced within twelve months after the execution of the lease, nor any payment of rentals made or attempted until about two years thereafter. Appellees contend that the lease was forfeited at the expiration of the first year by the failure of the lessee then to pay rentals for the second year, that is, that the rentals were payable in advance though not expressly so stated.

Their next contention is, that even if not payable in advance, they must have been paid before the expiration of the second year, and this was not done. Convinced that the proof sustains this latter contention, it will not be necessary to consider the former.

As the lease was dated and began on February 9, 1916, and no well was commenced on the leased premises within twelve months thereafter, it certainly was incumbent upon the lessee to pay, tender, or deposit to the lessor's credit in a bank in Blaine, Ky., rentals within the second year, which ended at midnight on February 8, 1918, or else by the terms of the lease it became null and void. Brooks v. Day Oil Co., 200 Ky. 323, 254 S. W. 912; Union Gas & Oil Co. v. Wright, 200 Ky. 791, 255 S. W. 697.

There is no claim that the rentals were paid or deposited to the credit of the lessor within the second year, and it is admitted that when tendered, the lessor refused to accept same. As to when this tender was made was in issue upon the pleadings, and upon this issue it was stipulated that Charles F. Osborne, cashier of the Bank of Blaine, would testify as follows:

> "That, as cashier of said bank, on or about the 9th day of February, 1918, he mailed a check to the said T. C. Rose for the sum of twenty-five dollars, which check was payable to the order of T. C. Rose, and there were funds deposited in said bank by the said Union Gas and Oil Company available for the payment of said check upon its endorsement and presentation, and said check on its face showed that it was to cover a rental of ten cents per acre on 250 acres, T. C. Rose farm, for the year ending on Febru-

ary 9, 1918, which check the said T. C. Rose refused to accept and returned to said bank and which was retained in the custody of said C. F. Osborne until he filed same in the United States district court for the eastern district of Kentucky, attached to his affidavit therein in case No. 693 of C. C. Rose, et al. plaintiff, against Union Gas and Oil Company, where said check now is, and copies of both are hereto annexed. Said check was held for and could have been taken up and cashed by T. C. Rose at any time he would call for it.''

The copy of the check referred to above bears date of February 1, 1918, but that fact is not evidentiary as to when it was mailed to T. C. Rose, which Osborne says was on or about February 9. This is the only competent evidence on the question, although F. P. Menager, bookkeeper in the office of appellant at Indianapolis, Indiana, on his direct examination testified that:

"On February 1, 1918, we sent our check to the amount of $25.00, which was to cover the rental on 250 acres of land, at 10 cents an acre, from February 9, 1917, to February 9, 1918, which check was payable to the order of T. C. Rose, and was sent to the Bank of Blaine.''

He later admitted, however, that he was not employed by appellant until in September, 1919, and that he had no personal information about this check whatever; and the trial court held his evidence with reference to this check incompetent, as clearly it was.

There is therefore no evidence whatever in the record that the check, although dated February 1, 1918, was mailed to the lessor until on or about February 9, 1918, and that when received by Rose, he refused to accept and promptly returned same.

The burden was upon plaintiff to prove its denied allegation of payment of rentals before the expiration of the second year covered by the lease, and having failed to do so, it is apparent the court did not err in dismissing its petition, unless, as is the insistence for appellant, Jesse Rose is estopped under the doctrine of the case of Cadillac Oil & Gas Co. v. Harrison, 196 Ky. 290, 244 S. W. 669, from insisting upon the forfeiture because of subsequent development by appellant on the

balance of the leased lands, separately owned by John and Charles C. Rose.

In the first place, such facts are not pleaded as an estoppel, and in the second place it seems obvious to us they do not constitute an estoppel against him.

T. C. Rose died before any attempt at development of any part of the 250-acre tract, and although leased as a single boundary, appellant knew—or at least is charge-able with knowledge—that after the death of the life tenant its lessors owned separately different portions of the leased land in fee. The lease had been repudiated by T. C. Rose and his son Jesse, and, as we have seen, had been forfeited by appellant's failure to pay rentals as required, long before the delayed effort to develop any part of it. Surely, then, Jesse Rose could not be estopped by anything his brothers did or suffered to be done with their separately owned tracts after the lease jointly exe-cuted by them had, by its terms, become null and void.

There is no claim in pleadings nor any evidence that Jesse ever did anything, with reference either to his own tract or the whole boundary covered by the lease, that would amount to a waiver of the forfeiture.

Wherefore for the reasons indicated the judgment is affirmed.