## Hammond, et al. v. Hurst.

(Decided November 10, 1925.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

Principal and Surety—Surety on Contractor's Bond Released from Liability, where Some Material Alterations were Made Therein Without Notice to Her and Without Her Consent.—Surety held released from liability on contractor's bond providing for faithful carrying out of building contract, according to plans and specifications attached, where some material alterations were made in contract without any notice to surety and without her consent, notwithstanding that contractor quit his contract and did not complete it at all as originally contemplated to owner's substantial loss.

O'NEAL & O'NEAL for appellants.

R. RUTHENBERG for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

The appellee had plans and specifications for a residence drawn by a competent architect, and on her own behalf entered into a written contract with appellant, A. L. Hammond, for its construction according to those plans and specifications at a price of $5,500.00, "to be paid in such sums as the contractor deems necessary to meet the running weekly expenses." It was also provided that the contractor should furnish bond signed by himself and wife in the sum of $2,000.00, and that "any minor changes that are reasonable should not affect the prices stated in this contract." At the time of the execution of the contract Hammond presented a bond which had theretofore been executed and acknowledged by himself and wife and which reads as follows:

"BOND.

"Louisville, Ky.,

August 1, 1921.

"The undersigned, A. L. Hammond, and Mrs. Anna Hammond, his wife, pledge real estate and personal property to the amount of ($2,000.00) located at 2110 St. Xavier street, Louisville, Ky., as security for the faithful carrying out of a con-

tract to build one five-room bungalow, with bath, for Mrs. Ronald W. Hurst, and located on the corner of Hermand street and Shawnee terrace, Louisville, Kentucky, according to the plans and specifications attached hereto.

"(Signed) A. L. HAMMOND
"(Signed) ANNA HAMMOND.
"W. V. ZIMMERMAN (Signed)."

Construction was begun on the 4th of August with the understanding that it would be completed in about 90 days. About the middle of October differences arose between the parties and Hammond quit the contract. Mrs. Hurst took the work over and completed it at a cost of $9,188.43, including $3,400.00 that she had theretofore advanced to Hammond. Subsequently she filed suit on the bond to enforce the lien upon the property of Mrs. A. L. Hammond located at 2110 St. Xavier street.

In addition to a traverse defendants pleaded alterations in the contract releasing the surety. Proof was taken and the case referred to the master commissioner, who reported in favor of plaintiff's claim. Exceptions to the report were filed and overruled and judgment entered subjecting the property to the lien. Defendant appeals.

The writing denominated a bond was recorded in the county clerk's office. It is questionable whether it constituted a setting aside of the property of Mrs. Hammond as security for her husband's liabilities as provided in sec. 2127, Ky. Statutes. However, as we have reached the conclusion that the case should be reversed on another ground we may assume, without deciding, that it was sufficient in this respect.

The plans called for a brick veneer bungalow, 60 feet in length by 26 feet in width. After the execution of the contract and bond the width of the building was changed to 28 feet and higher priced brick and shingles were substituted for those named in the specifications. The building was commenced at the location designated, but after the porch foundation was laid this was found to conflict with the building restrictions in the deed and it had to be moved back, and there were several other minor alterations. All of these changes were made without the knowledge or consent of Mrs. Hammond.

Mrs. Hurst testified that these changes were made at the suggestion of Mr. Hammond, who told her that

extending the width of the building would not add to its cost and that she had agreed with him to pay the extra cost caused by the other changes. She further testifies that she made weekly advances to Hammond up to October 15, aggregating $3,400.00; that the building was then only about one-half completed and for self-protection she demanded of Hammond receipts showing his expenses for material and labor; that he declined to furnish these and admitted to her that he could not complete the building at the contract price, but said he would continue to work for her for wages; that she declined to do this and he quit. She thereupon employed labor and purchased the necessary additional material and completed the building at a total cost of over $9,000.00, it appearing that Hammond had paid for but very little of the material purchased by him. This was contradicted by Hammond, who claims that the changes were made because desired by Mrs. Hurst; that such changes added as much as $1,000.00 to the cost of the building; that but for them he could have completed the building at the contract price. It is his further contention that under the contract he was not required to install either the lighting, heating or plumbing fixtures, all of which were included in the total cost presented by Mrs. Hurst. It is shown by competent architects that the increased width of the house added approximately $425.00 to its cost, and there is evidence that difference in the cost of the brick amounted to $175.00; that of shingles $55.00, and other items are named in smaller sums.

We do not think it necessary to go into details as to these or to determine whether under the contract and plans and specifications the contractor undertook to install the fixtures above stated. It is clear that some material alterations were made in the contract without any notice to the surety and without her consent. The bond only provided for the faithful carrying out of the contract, "according to the plans and specifications attached." In making material changes in the specifications the principal and the owner were in effect making a new contract and one upon which the surety never agreed to be bound; and under the uniform adjudications of this court such conduct would release her from liability. Thus it has been said:

"It is well settled and undisputed law that the surety is only bound by the very terms of his con-

tract and that if the creditor does any act which in contemplation of law, alters the surety's liability, increases his risk . . . the surety is thereby discharged, and the fact that the surety may not have been actually injured is immaterial." Calloway v. Snapp, 78 Ky. 561; Pond Creek Coal Co. v. Citizens T. & G. Co., 178 Ky. 561; Harlan Fuel Co. v. Wigginton, 103 Ky. 547. "But if after the bond was given it (the owner) changed the contract and made material additions to the work not provided for in the specifications the sureties were released from liability on the bond." Harlan Coal Co. v. Wigginton, *supra*.

If A. L. Hammond represented to the owner that the increased width of the building would not increase the cost, and he and she agreed for her to pay the increased cost of the other changes, he would be estopped from claiming otherwise in this action, but this would not relieve the owner from the necessity of procuring the consent of the surety to the admitted material changes, and such estoppel would not extend to the surety. Appellee argues that as the contractor quit his contract and did not complete it as originally contemplated or otherwise, and as she is shown to have lost over $2,000.00 after making a reasonable allowance for everything claimed by the contractor; that she should be allowed to recover anyway. This position is untenable. The material alterations substituted a new contract which superseded the old contract and left it without binding effect upon the surety.

Wherefore, the case is reversed and cause remanded for proceedings consistent with this opinion.