PARK PRESBYTERIAN CHURCH OF
ITALY et al. v. WM. CAMERON &
CO., Inc., et al.

No. 1050.

Court of Civil Appeals of Texas. Waco.
April 16, 1931.

Rehearing Denied May 28, 1931.

John T. Suggs, Jr., of Dallas, for appellant Southern Surety Co.

Thompson, Knight, Baker & Harris, of Dallas, for other appellants.

J. L. Gammon, of Waxahachie, and Sleeper, Boynton & Kendall, of Waco, for appellees.

BARCUS, J.

This suit was instituted by appellee, Wm. Cameron & Co., Inc., hereinafter called Cameron & Co., against the Park Presbyterian Church of Italy, hereinafter called church, and Owens-Nash Construction Company, hereinafter called contractor, and the Southern Surety Company, hereinafter called surety.

In January, 1926, Owens-Nash Construction Company made a contract with the church to erect a building for it at an agreed price of $16,745, and executed a bond with the Southern Surety Company, as surety, conditioned that the contractor would complete the building and pay for all labor and material used in its construction and deliver same clear of all liens to the church. The contract between the church and the contractor, which was made a part of the bond, provided that: "All payments (under the contract) shall be paid by the owner to the contractors as follows: all labor and wage expenses shall be paid weekly on certificate of the contractor, endorsed by the engineer. All material and other charges except labor and wages to be paid within ten days after presentation of statement certified by the contractor and endorsed by the engineer. Upon completion of the work and final acceptance by the engineer, the contractor shall present evidence satisfactory to the engineer and owner that there are no claims or liens against the work. Within ten days after presentation of the above evidence of no claims or liens, the owner shall pay all remaining funds due to the contractor upon the engineer's certificate."

Willis Livingston was the local agent and representative of Cameron & Co., and as such sold and delivered the lumber to the contractors for said job. He was a member of the church and the treasurer of the building fund for the church. He was selected by all parties as the engineer in charge of the building. He occupied all three of said positions and relationships with the full knowledge and consent of the parties, and no one raised any question or intimation that he was in anyway unfaithful to the trust committed to his care by the respective parties, or that he did anything in connection with the entire transaction that was not entirely satisfactory to all parties.

The contractors, about the 5th of May, abandoned the contract, and the church, under the terms of the contract, notified the surety company thereof, and then proceeded to complete the building at a cost of $1,493.98 above the contract price. Cameron & Co. filed its lien against the property of the church for $2,298.10, the unpaid balance due it by the contractor on said job, and filed this suit on its debt against the church and the surety company, and asked for a foreclosure of its materialman's lien.

The church, by its answer, contended that Cameron & Co. had no materialman's lien, and that it was not personally liable for said debt. By cross-action the church sought judgment against the surety company for the amount it had spent above the contract price to complete the building and for the amount

that Cameron & Co. might establish against the church or its property, and against the contractor for the amount it expended over the contract price and amount of Cameron & Co.'s claim.

The surety company, by its answer, contended that Cameron & Co. was not entitled to a personal judgment against it under the terms of the bond, and that Cameron & Co. had not fixed any materialman's lien; and, further, that it was entirely released from the bond because the church, and the contractor had materially changed the terms of the contract in that the church had paid to the contractor three items totaling $850, which had not been paid to said contractor for either labor or material put into the church building, and that said amount was paid without the presentation of a statement for labor or material therefor, certified by the contractor and indorsed by the engineer.

There were some interveners who were disposed of by the judgment, but they are not involved in this appeal.

The cause was tried to the court and resulted in judgment being entered for Cameron & Co. against the contractor for $2,298.-10 and for a foreclosure of its materialman's lien on the property of the church, and judgment for the church against Owens-Nash Construction Company for $3,792.08, and judgment for the church against the surety company for $3,342.08, and for the surety company against the Owens-Nash Construction Company for $3,342.08. The surety company and the church have appealed from the judgment as rendered.

█ It is the contention of each of the appellants that Cameron & Co. did not take the necessary statutory requirements to fix a materialman's lien against the property of the church, as required by articles 5452 and 5453 of the Revised Statutes. As we understand, their main contention being that Cameron & Co. did not, as provided by subdivision 3 of article 5453, give written notice to the church, as owner of the building being constructed, or to its agent, of each and every item furnished and the amount unpaid. There seems to be no contention but that the account was properly itemized and filed with the county clerk in the manner and for the time as provided by said article. The testimony relative to the transaction is given almost exclusively by Mr. Livingston, who, as above stated, was the agent of Cameron & Co., selling the material, the engineer on the work, supervising same for the church, and a member of the building committee and treasurer thereof who paid out the funds, the checks therefor to be countersigned by Mr. George, the chairman of the building committee for the church. The complete itemized list of the material furnished was attached to the pleading as filed by

Cameron & Co., consisting of several hundred different items extending from the 1st of January to the 5th of May. Mr. Livingston testified that said account was correct, accurate, and stated the true facts. Said account shows that Cameron & Co. furnished a total of $6,839.15, the major portion thereof being furnished prior to April 15th. He further testified that, as each bill of material was furnished, two copies thereof were made, one was retained by him as agent of Cameron & Co., one was given to the contractors, and that the contractors would then check over the items and approve same and then return the bills to him as the engineer in charge of the church building and as the representative of the church, and that he would then keep said bills as approved by the contractor in the church file. The itemized bills showing the material furnished and prices charged therefor having been approved by the contractor and delivered to Livingston as the engineer on the job and as the representative of the church, and same having been by Livingston, as the representative of the church, received and filed with the church papers in connection with said contract, thereby constituted written notice to the church, as owner, as required by subdivision 3, of article 5453 of the Revised Statutes. We think the testimony supports the implied findings of the trial court that Cameron & Co. complied with all the statutory requirements to fix its materialman's lien and supports the amount for which judgment was rendered in favor of Cameron & Co. First National Bank v. Lyon-Gray Lumber Co. (Tex. Civ. App.) 194 S. W. 1146; Id., 110 Tex. 162, 217 S. W. 133.

█ The facts in support of the contention of the surety company that it was released by virtue of the action of the church and the contract are without dispute. The provisions of the contract as to how the funds were to be paid by the church to the contractor are set out in full above. On March 27, 1926, when the contractor had received about one-fourth of the contract price, the church paid to him $250 to be used by him for his personal account. Again, on April 10th, the church paid to the contractor $150 to be used by him on his personal accounts. Again, on April 7th, the church paid to the Dallas Press Brick Company, for the contractor, $450, which had no connection with the contractor's job for building the church at Italy. There was no statement for any of said items certified to by the contractor and indorsed by the engineer for labor or material used on said building. Mr. Livingston and Mr. George, the representatives of the church, testified that, at the time said respective checks were given, they knew that said funds were being paid to the contractor for his private use, and that said money was not to be used for the payment of any labor

or material going into the church building. They testified that, at the time said respective checks were given, the contractor had put labor and material into the church building for several thousand dollars more than he had been paid therefor, and that they thought the church was safe in paying the contractor said amounts for his personal use. At the time the $450 was paid, the Dallas Press Brick Company had sued the contractor and was preparing to run a garnishment on the church.

The payment by the church, as owner of the building, to the contractor, of the $850, was clearly in violation of the specific terms of the contract that all funds under said contract should be paid to the contractor for labor and wages on certificate of the contractor, indorsed by the engineer, and for material within ten days after presentation of a statement therefor, certified to by the contractors and indorsed by the engineers. Williams v. Baldwin (Tex. Com. App.) 228 S. W. 554; Fidelity & Deposit Co. v. Kelsay Lumber Co. (Tex. Com. App.) 33 S.W.(2d) 731.

In Williams v. Baldwin, supra, the court held that the owner of a building, having paid the contractor without obtaining a certificate from the architect as to the correctness thereof, was such a variation of the contract as to absolutely release the surety company, although it was shown that the owner did not pay to the contractor more than the 75 per cent. he was to pay under the terms thereof.

In Fidelity & Deposit Co. v. Kelsay Lumber Co., supra, the court held that, since the owner of the building, the materialman, and contractor made an agreement whereby the materialman would not insist on bills for material being paid until after the contract was completed, and that said bills would then be paid by the owner out of the 25 per cent. reserve funds, such constituted such a material change in the contract as to absolutely release the surety company.

There are numerous authorities which have been approved by the Supreme Court supporting in effect the holding stated in the cited cases, and it seems now to be the established law in this state that any material change made in a building contract with reference to the time, manner, or method of paying for labor or material placed in the building by the contractor, without the knowledge and consent of the surety, absolutely released the surety from all liability regardless of whether the surety company shows any injury thereby or not. If it were a question of first impression, we think the correct and much more equitable rule would be that the surety should only be released from the bond to the extent that funds had

been paid by the owner to the contractor not authorized by the contract, unless the surety established the fact that it had been otherwise injured by said act. In the case at bar, the utmost amount that the surety company could have been injured by reason of the payment by the church to the contractor was the $850. It appears to be almost a travesty on justice to say that, because the church paid the contractor $850, which it should not have paid under the strict terms of the contract, it thereby released the surety company from paying the additional $3,000 required to complete the building and release the liens fixed thereon.

[4] Since we are required to follow our Supreme Court in its enunciation of the law, under the authorities above cited, we reluctantly reverse the judgment of the trial court in favor of the church against the surety company, and here render judgment that the Park Presbyterian Church of Italy recover nothing against the Southern Surety Company, and that said Southern Surety Company go hence and recover its costs against said church. The judgment of the trial court in all other respects is affirmed.

The judgment of the trial court is affirmed in part, and reversed and rendered in part.