## American Surety Co. of New York v. Noe.

(Decided June 21, 1932.)

W. PRATT DALE and FORESTER & CARTER for appellant.

JOHN B. SNYDER, JAMES M. GILBERT, H. H. FUSON and. E. H. JOHNSON for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

Mrs. Margie Noe desiring to construct a theater and office building in Harlan, Harlan county, Ky., entered into a written contract for that purpose, on the 2d day of September, 1928, with Crider & Dunavent, a firm engaged in the business of general contractors, to construct it for her. To secure her in their performance of the contract, a bond for $17,850 was executed and delivered by them with the American Surety Company, as their surety. In their contract with her for the agreed consideration of $35,700, they bound themselves to "provide all the materials and perform all

the work to erect and complete the building according to its terms and the plan and the specifications prepared by the architects named in the contract." She agreed to pay them 85 per cent. of the contract price, on "only architects' certificates" as the work progressed. By the bond of the American Surety Company, it agreed that the principals named in the bond shall well and truly perform said contract and specifications in the manner and within the time therein specified according to the letter and spirit thereof, and shall pay for all material and labor used by the obligors in lawful moneys of the United States.

Crider & Dunavent failed to carry out their contract. On September 2, 1928, Mrs. Noe instituted this action in the Harlan circuit court to recover of them and the American Surety Company the amounts which she claimed she was caused to expend to complete the building as per the contract of Crider & Dunavent. The court decreed against Crider & Dunavent a recovery of $19,756.18, and against the American Surety Company, $17,850, the sum specified in its bond, with interest. The American Surety Company appeals.

In its original answer, in addition to a traverse, it affirmatively alleged: "That the plaintiff violated that part of the contract in that she procured for and furnished to the contractors, Crider & Dunavent, the sum of $15,000.00 without any certificate being issued by said architects, R. F. Graf & Sons, and which was used by the said contractors in the payment of their indebtedness of their own and not included in the performance of work under a contract in this case, contrary to the terms of said contract and the bond sued on herein, improperly and without right taken credit as a payment on said contract for said sum of $15,-000.00." It further averred: "That she failed to retain the sum of 15 per cent. on amount of the contract price and retained only $3,249.09, when in fact she should have retained $5,580.00, making a difference between what she should have retained, and what she retained under the contract the sum of $2,335.91, for no part of which sum this defendant will be liable under this bond and contract."

After the evidence was taken, it filed an amended answer wherein it was charged that: "She signed the $15,000 note as surety for Crider & Dunavent under an

understanding and agreement between the plaintiff and said contractors, Crider & Dunavent, that the said note would be paid by plaintiff using for said payments. the amount due under the first estimate or certificate obtained from the contractor in charge of said work to the said amount of $15,000.00; that the architects made an estimate on December 11, 1928, and issued the certificate of $15,000.00, and that plaintiff attempted to credit her account with the contractors by the amount of her liability under the note executed for the $15,-000.00.'' It further averred that: ''Through the execution of said note by the plaintiff to the First State Bank of Harlan, and the deposit to the credit of Crider & Dunavent in said bank the sum of $15,000.00, was a. payment in advance under said contract between plaintiff and Crider & Dunavent, or plaintiff has failed to pay to said contractors the amount of the estimate or certificate issued by the architect in the sum of $15,000.00 on the 11th day of December, 1928, and one of said alternatives is true, and this defendant is unable to state which alternative is true other than disclosed by the proof herein.''

It is fairly shown by the evidence that Crider &. Dunavent, at the time they entered into the contract. with Mrs. Noe, were not financially prepared to begin the execution of, much less to carry out, their contract,. and that their securement of the proceeds of the $15,000 note was both necessary and required to enable them to begin its performance. After securing the loan of $15,000 and before December 11, 1928, the date of the architect's first certificate, they deposited in the bank, funds derived from other sources, and the proceeds of the $15,000 note, the sum of $32,777.59, with. which they paid on other contracts $15,164.89, and for material and labor which actually went into Mrs. Noe's building, the sum of $17,877.59. On the 11th day of December, 1928, the architect made the first estimate and issued the first certificate per the terms of the contract under which Mrs. Noe's building was constructed. At that time Crider & Dunavent claimed to him that they had on the ground for use in her building $25,000 worth of material. But on their and his estimate of the material on hand, he issued the certificate only for $15,000, delivered it to them, and they assigned it to Mrs. Noe; she retained it until the $15,000 note matured in April, 1929, when she applied its proceeds

to the payment of the note. After the $15,000 certificate was issued, Crider & Dunavent continued to perform their contract. The building progressed, and the architect's certificates were issued, from time to time, to the contractors and paid by Mrs. Noe, until February 27, 1929, when, on their failure properly to perform their contract, the architect took under advisement with the American Surety Company of New York, the condition and situation of Crider & Dunavent and the status of the building of Mrs. Noe. He explained the situation, and condition of' Crider & Dunavent, and imparted to Radford, its assistant manager, the amount that had been expended on her building. He advised Radford that the best thing to do was to take over the building under article 5 of the contract; that Crider & Dunavent did not have a capable foreman and superintendent on the job. Thereupon, Radford and the architect agreed for the architect to find and place in charge of the construction and completion of the building a suitable man as foreman and superintendent, which was accordingly done. Under this arrangement between them, Elmer Henry was selected and placed in charge as foreman and superintendent. "From then on they proceeded that way." At that time Crider & Dunavent were unable to pay their laborers, and the architect would not issue to them certificates. Thereupon, the American Surety Company, of New York, through its agent, C. T. Dodson, agreed to, and did, advance Crider & Dunavent $1,000 which they secured by an order on Mrs. Noe's contract for that amount and delivered it to the American Surety Company of New York; the architect agreeing to issue the certificate when the work had thereafter sufficiently progressed to justify him. Crider & Dunavent were unable further to carry out the contract without assistance. The architect sought and obtained on May 6, 1929, the written consent of the American Surety Company of New York to apply the contract price in excess of 85 per cent. to pay for material as it was delivered. Thereafter the architect continuously corresponded with the representatives of the American Surety Company of New York, "and kept them advised as to just what was going on." Crider & Dunavent abandoned the contract. Henry assumed full charge, "and just continued as he had been," except "Mrs. Noe made the payroll and bought sufficient

material to complete the building according to the plan and specifications.'' In doing so, she paid for material and labor in excess of the contract price, $19,766.68. Materialmen's liens were asserted therefor by the holders of the claims which were afterwards paid by Mrs. Noe with funds borrowed from the Louisville Title Company, after the building had been completed under the superintendency of Henry. After it was so completed the architect wrote to the American Surety Company of New York. It replied as follows:

"Louisville, Ky., June 18, 1929.

"Mr. R. F. Graf, R. F. Graf & Sons, Architects, Knoxville, Tenn.

"In Re: Crider & Dunavent Contract bond to Mrs. Margie Noe, No. 918513B.

"This will acknowledge receipt of your letter of the fifteenth. The information you have given me has been passed to our legal department for their advice. As soon as I am in receipt of a reply, I shall communicate with you.

"Thanking you for the attention given this matter, I am,

"Yours very truly,

"Lewis Y. Johnson, Manager.

"By O. L. C. Radford, Asst. Mgr.''

It should be noted that at no time did the appellant assert or claim a release of its obligation under its bond, nor intimate the defense now relied on.

A narration of the facts and the excerpts above of the appellant's pleadings show the appellant has shifted positions.

On being advised by the architect of the inability of Crider & Dunavent to carry out their contract, it (a) chose to select a foreman and superintendent, and advanced funds to carry on the contract. (b) In its original answer, it in effect admitted that even though she signed the $15,000.00 note as surety, received the $15,000 architect's certificate and applied its proceeds to the payment of the $15,000 note, such was no violation by her of the contract, in the absence of both alle-

gation and proof that the proceeds of the $15,000 note was applied by the contractors for a purpose other than labor and material in the erection of her building. (c) Its final and present position is that the signing of the $15,000 note as surety, and the application of the proceeds of the $15,000 certificate to its payment, the one or the other, or both, ipso facto, relieved it of all liability on its bond.

If the signing the $15,000 note and her receiving, on December 11, 1928, the $15,000 certificate were a breach by Mrs. Noe of her contract, and operated to release the appellant of its obligation, it chose not to be released by its voluntary selection of a foreman and superintendent and placing him in charge of the execution of the contract of Crider & Dunavent, and provided them with the $1,000 with which to pay their laborers, and by letter waived its right to the 15 per cent. of the contract price, and consented for its use to purchase material.

It should be conceded that if Mrs. Noe's signing the $15,000 note, or her receiving for the payment of the note, the architect's certificate, issued, delivered, and assigned to her on December 11, 1928, were such violation of her contract, either expressed or implied, as operated as a discharge of the appellant's liability to her, the time for it to make its election to recognize and assert its discharge by reason thereof was when it chose and pursued a contrary course.

The appellee has not pleaded the appellant's actions and conduct either as estoppel or waiver. Such a plea was required of her before she may rely on the facts which constituted an estoppel or waiver. Union Gas & Oil Co. v. Indiana Tex. Petroleum Co., 202 Ky. 236, 259 S. W. 57.

In the amended petition she interposed a plea of estoppel against the appellant's right to complain of the payment of the 15 per cent., but this is inadequate as a plea of estoppel against, or a waiver of, the appellant's chief defense.

The appellant by its contract was not a voluntary or gratuitous surety. It was a paid surety, and as such it may not avail itself of the principles applicable to and controlling the rights of a voluntary or gratuitous one. It may not avail itself of the rule strictissimi

juris which controls and determines the liability of a gratuitous surety. Graziani v. Com., 123 Ky. 799, 97 S. W. 409, 30 Ky. Law Rep. 119; Com. v. Bacon, 111 S. W. 387, 33 Ky. Law Rep. 935; Harlan Fuel Co. v. Wigginton, 203 Ky. 546, 262 S. W. 957; White v. Strong, 220 Ky. 119, 18 S. W. (2d) 960.

The rule in case of a voluntary or gratuitous surety is, he is only bound by the very terms of his contract, and if its beneficiary does any act which, in contemplation of law, without his consent, alters his position or increases his risk or deprives him, even for a moment, of a right, he is thereby discharged, and the fact that the surety may not have been actually injured is immaterial. Calloway v. Snapp, 78 Ky. 561.

The reason for applying to a paid surety a different rule when determining his liability in such cases was stated in Atlantic Trust & Dep. Co. v. Laurinburg (C. C. A.) 163 F. 690, 695, in this language:

"The very reason for the existence of this kind of corporations, and the strongest argument put forward by them for patronage, is that the embarrassment and hardship growing out of individual surety-ship that give application for this rule is by them taken away; that it is their business to take risks and expect losses. If, with their superior means and facilities, they are to be permitted to take the risks, but avoid the losses, by the rule of strictissimi juris, we may expect the courts to be constantly engaged in hearing their technical objections to contracts prepared by themselves. It is right, therefore, to say to them that they must show injury done to them before they can ask to be relieved from contracts which they clamor to execute."

Some of the cases in which this rule was recognized and applied are Hormel & Co. v. American Bonding Co., 112 Minn. 288, 128 N. W. 12, 33 L. R. A. (N. S.) 513; Pickens County v. National Surety Co. (C. C. A.) 13 F. (2d) 758; Maryland Casualty Co. v. Ohio River Gravel Co. (C. C. A.) 20 F. (2d) 514; Southern Surety Co. v. Plott (C. C. A.) 28 F. (2d) 698; Fidelity, etc., Co. v. Metal Window Products Co. (C. C. A.) 30 F. (2d) 56; U. S. Fidelity & G. Co. v. Golden Press & Fire Brick Co., 191 U. S. 416, 24 S. Ct. 142, 48 L. Ed. 242; United States, for use of Hill v. American Surety

Co., 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437; Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206; Maryland Casualty Co. v. Fowler (C. C. A.) 31 F. (2d) 881, 63 A. L. R. 1375; Royal Indemnity Co. v. Northern Ohio Granite & Stone Co., 100 Ohio St. 373, 126 N. E. 405, 12 A. L. R. 378; Champion Ice Mfg. & Cold Storage Co. v. American Bonding & Trust Co., 115 Ky. 863, 75 S. W. 197, 25 Ky. Law Rep. 239, 103 Am. St. Rep. 356; National Surety Co. v. Price, 162 Ky. 632, 172 S. W. 1072; Lewis' Adm'r v. Fidelity & Guaranty Co., 144 Ky. 428, 138 S. W. 305, Ann. Cas. 1913A, 564; Aetna Life Ins. Co. v. Bowling Green Gas Light Co., 150 Ky. 732, 150 S. W. 994, 43 L. R. A. (N. S.) 1128; U. S. Fidelity & Guaranty Co. v. Allen County, 122 Ky. 825, 93 S. W. 44, 29 Ky. Law Rep. 356; Henderson v. Phoenix Ins. Co., 233 Ky. 217, 25 S. W. (2d) 359. It is, however, the duty of the beneficiary of a contract, the performance of which is secured by a bond of a paid surety, in good faith, to observe the expressed obligations of the contract, and also to refrain from doing something which in law alters his position or liability, increases his risks, or deprives him of a right to some indemnity afforded him by the principal's contract. Calloway v. Snapp, supra; Harlan Fuel Co. v. Wigginton, supra; Maryland Casualty Co. v. Ballard County, 217 Ky. 343, 289 S. W. 316; Henderson v. Phoenix Insurance Co., supra.

Illustrative of this principle is the case of Pond Creek Coal Co. v. Citizens' Trust & Guaranty Co. 170 Ky. 601, 186 S. W. 494, wherein the owner agreed to withhold the reserved per cent. as indemnity for the protection of the surety. To the same effect is Hammond v. Hurst, 211 Ky. 167, 277 S. W. 308, in which there was a material alteration without notice to, or consent of, the surety. The case of Vanmeter v. Corcoran, 2 Ky. Law Rep. 216, exemplifies the same principle, wherein the contract required the owner to retain a per cent. of the contract price until "the 'satisfactory completion' of the work." In St. Mary's College v. Meagher, 11 S. W. 608, 11 Ky. Law Rep. 112, the contract provided that the owner would withhold a part of the contract price until after final inspection, which he failed to do. In Inland Navigation Co. v. American Surety Co., 190 Ky. 504, 227 S. W. 809, a like provision of the contract was breached by the owner. In Park Presbyterian Church v. Wm. Cam-

eron & Co. (Tex. Civ. App.) 38 S. W. (2d) 901, the owner paid the contractor a portion of the contract price, knowing it was for his personal use. In these cases it was held that the sureties were released by the acts of the beneficiaries of the sureties' contracts.

A principle co-ordinate with that applied in these cases is, the paid surety must show damage or injury, or that he was prejudiced thereby, as the direct and proximate result of the alteration, departure from, or violation of the principal's contract. There is no presumption that the surety was harmed, nor is the suggestion of mere contingencies or possibilities sufficient. Grinnell Realty Co. v. General Casualty & Surety Co., 253 Mich., 16, 234 N. W. 125; London & Lancashire Ind. Co. v. Board of Com'rs, 107 Ohio St. 51, 140 N. E. 672; National Surety Co. v. Price et al., 162 Ky. 632, 172 S. W. 1072; Museum of Fine Arts v. American Bonding Co., 211 Mass. 124, 97 N. E. 633; Guaranty Co. v. Pressed Brick Co., 191 U. S. 416, 124 S. Ct. 142, 48 L. Ed. 242; United States, for use of Hill v. American Surety Co., 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437; Ill. Surety Co. v. John Davis Co., supra; National Surety Co. v. Lincoln County, 151 C. C. A. 555, 238 F. 705.

In Smith v. U. S., 2 Wall, 219, 234, 17 L. Ed. 788, is this language:

"Responsibility of a surety rests upon the * * * terms of his contract, but when it is changed without his knowledge or authority, it becomes a new contract and is invalid, because it is deficient in the essential element of consent."

While it is a generally accepted rule that the alteration of a contract or its terms without the consent of the surety will operate to discharge him from liability, a mere clerical, immaterial, and nonprejudicial alteration of, or variation from, the contract by the beneficiary will not operate to discharge the surety. Fidelity & Casualty Co. v. Metal Window Products Co. (C. C. A.) 30 F. (2d) 56; Greek Catholic Union v. American Surety Co. of New York (C. C. A.) 25 F. (2d) 31; London & Lancashire Ind. Co. v. Board of Commissioners, 107 Ohio St. 51, 140 N. E. 672; Pickens County v. National Surety Co. (C. C. A.) 13 F. (2d) 758; Russell v. Ross, 157 Cal. 174, 106 P. 583.

Another applicable principle in such cases is thus stated in 21 R. C. L. 1006:

> "A surety is not discharged by an independent contract between the principal parties although it may be contemporaneous with and relate to the subject matter as the surety's contract without varying the terms thereof. To discharge the surety such variation must be in the terms of the contract by which the surety is bound."

In Waddell v. Cary, 155 S. C. 152, 152 S. E. 179, it was held that the surety was not discharged by an independent contract between the principal parties, though it may relate to the same subject as the sureties contract; to discharge a surety there must be a material variation in the terms of the contract by which the surety is bound.

In Museum of Fine Arts v. American Bonding Co., supra, the building contract provided that payment should be made by the owner upon the architect's certificates, and that certificates for only 90 per cent. due the contractor should be issued. The conditions of the bond required of the contractor the performance of the contract. Before the work was completed the contractor needed funds to carry out the contract. The owner loaned him $5,000, evidenced by his notes, upon the agreement that, as the contract price was earned and paid, it might be applied to the payment of his notes. The amount of the note was in excess of the amount that was due him at its date, and no architect's certificate was asked for or issued at the time of its execution. The contractor used the money obtained on the note with which to pay for material and labor used in carrying out the contract. He failed to complete the contract, and the owner was obliged to do so. The surety company interposed this transaction as a defense to its liability on its bond. The court held that the loan to the contractor was an independent transaction and not a payment under the contract in violation of its terms, and that therefore it did not relieve the sureties from liability pro tanto; and also payment of the money to the contractor as a loan was not the result of a breach of the contract by the contractor, and therefore the sureties were liable to the owner on that account.

See Federal Surety Co. v. White, 88 Colo. 238, 295

P. 281; American Employers' Insurance Co. v. Huddleston (Tex. Civ. App.) 39 S. W. (2d) 952; Grinnell Realty Co. v. General Casualty & Surety Co., 253 Mich. 16, 234 N. W. 125; Becker-Boter Oil & Gas Co. v. Bonding & Ins. Co., 254 Mich. 94, 235 N. W. 869.

Applying the foregoing principles to the undisputed facts in the present case, the signing of the $15,000 note as surety, even if regarded as a payment in advance by Mrs. Noe to the contractors, the appellant was in nowise damaged, injured, or prejudiced thereby. The act of signing the note as surety, even if it be regarded not as an independent transaction, but as a part payment of the contract price by Mrs. Noe, the fact remains with the proceeds of the $15,000 note and other funds the contractors actually purchased, paid for, and placed on the ground more than $15,000 of material prior to December 11, 1928, the date of the issuance and delivery of the architect's certificate for $15,000, which the contractors assigned and delivered to her. The contractors did not appropriate any portion of the proceeds of the $15,000 note to their personal use. The checks which were issued and paid by them for the material establish this fact.

The payment of the proceeds of the $15,000 note to them by virtue of the signature of Mrs. Noe as surety, without the architect's certificate, if it was in fact and in law a payment to them of that much of the contract price, presents the essential, decisive question for determination. Conceding, without deciding, that it was paid as a part of the contract price, under the disputed facts, its proceeds were in fact actually applied by the contractors to the payment of the cost price of material for the construction of her building, actually on hand, prior to December 11, 1929, the date of the $15,000 architect's certificate; thus bringing this case squarely within Mayes v. Lane, 116 Ky. 566, 76 S. W. 399, 25 Ky. Law Rep. 824; U. S. Fidelity & Guaranty Co. v. Trustees of Baptist Church, 102 S. W. 325, 31 Ky. Law Rep. 520, which were recognized but distinguished in Pond Creek Coal Co. v. Citizens' Trust & Guaranty Co., and Harlan Fuel Co. v. Wigginton's Adm'r, supra.

The indorsing and delivering to Mrs. Noe and her application of the $15,000 architect's certificate to the payment of the $15,000 note cannot be regarded as a

breach by her of either an expressed or implied obligation of her contract. There is no provision in the contract requiring her to look after the application by the contractors of the money paid to them, under her contract, after the issuance of the architect's certificate. It should be conceded that without a contractual duty resting upon her to see that the portion of the contract price paid to them upon the architect's certificates was applied by them to the purchase of either material or labor, their appropriation thereof to their own personal use, whether she or another was the recipient thereof, cannot operate to discharge the surety of its obligation by virtue of its bond.

This view is consistent with the action of appellant in its selection in April, 1929, by and through the architect, of a foreman for the job, after the issuance and delivery to her of the $15,000 certificate, December 11, 1928. It is further sustained by the fact that at the time the appellant filed its original answer it was regarded by the appellant necessary and required of it, in order to state a defense, to allege that the $15,000 note and the $15,000 certificate were by her assistance not used by the contractors for the purchase of material and labor for the construction of the building. The contract required the contractors to pay for the material and labor necessary to construct the building. The bond of the appellant obligated it to see that the contractors well and truly performed their contract. Under the authority of Standard Oil Co. v. National Surety Co., 234 Ky. 765, 29 S. W. (2d) 29, the claimants for material and labor furnished the contractors were, by reason of the provisions of the contract and the bond, entitled to maintain an action thereon against the appellant for a recovery of their claims. The application of the proceeds of the $15,000 note to the payment for material which the contractors had on hand and actually paid for prior to the 11th day of December, 1928, relieved the appellant of liability therefor, in an action either by those furnishing the material, or Mrs. Noe. Therefore, her act in thus providing the contractors with the money with which to pay for the material on hand of that date was a benefit to the appellant instead of an injury. As we have stated, it is satisfactorily shown that if the contractors had not procured the proceeds of the $15,000 note, with Mrs. Noe's signature thereto as surety, they would

have been financially unable even to commence the performance of their contract. Her signature saved the appellant of the consequences of such failure.

The commissioner in his report allowed for delay damage at the rate of $20 per day for 100 days, amounting to $2,000. Excluding this sum from the amount found to be due Mrs. Noe by virtue of the breach of their contract by the contractors, there is left unpaid a greater amount than was recovered of the appellant. It has no ground of complaint because of the item of damage for delay, as no judgment was entered against it therefor. It is argued that it is not sufficiently shown by the evidence that the claimants for the material and labor asserted liens in the manner and form provided by the statute in such cases. Though this contention be correct, as we have hereinbefore stated, the holders of claims for materials and labor were entitled to assert the same against the appellant by reason of the provisions of the contract and bond, without complying with the statutes controlling materialmen's liens.

Wherefore the judgment is affirmed.

Whole court sitting.